CASE 11.—ACTION BY J. S. VERTREES AGAINST  HEAD  &
   MATTHEWS.—April 22, 1910.

## Vertrees v. Head & Matthews.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for defendants, plaintiff appeals.—Reversed.

1.  Frauds, Statute of—Necessity of Writing—Fraudulent Representations.—The statute of frauds, prohibiting any action to charge one for a representation concerning the credit, ability, etc., of another, made with intent that the other shall obtain credit thereby, unless the representation, or some memorandum thereof is in writing, and signed by the party to be charged, does not include representations made fraudulently or in violation of the statute, but only cases as to representations made in good faith as to another's credit, so that fraudulent representations by insurance agents as to the solvency. etc., of an insurance company, doing business in the state in violation of statute need not have been made in writing in order to support an action for damages caused by such representations.

2   Principal and Agent—Agent's Liability—Scope of Authority.—As a rule an agent, acting within the scope of his authority in the course of the employment, is not responsible for representations made as to matters in the course of his agency; but, if they are to his knowledge false and fraudulent, he is personally liable for injury therefrom.

3.  Principal and Agent—Agent's Liability.—If one assumes to act as agent in violation of a statute, so as to mislead another with whom he deals as agent to his injury, the agent will be personally liable.

4.  Insurance—Agents—Personal Liability.—One  who  undertakes, in violation of statute, to act as agent for an insurance company not authorized to do business in the state personally guarantees the solvency of the company and its ability to perform its agreements, and is liable for loss sustained, be-

Vertrees v. Head & Matthews.

cause of its insolvency or failure to perform its contract, to one contracting with it through such agent, without knowledge that the company was not authorized to do business, and believing that the agent was duly authorized, irrespective of any false representations concerning its solvency, if the company itself would have been liable to insured had it been solvent, but the agent could make any defense the company could have made.

5.  Insurance—Agents—Existence of Agency.—Under Ky. St. section 633, making one who solicits and receives applications for insurance on behalf of an insurance company, or transmits for another an application for insurance, the agent of such company, persons who transmitted an application for a policy to an insurance company were agents of the company.

6.  Insurance—Agents—Liability.—If defendants forwarded an insurance application merely to accommodate plaintiff, and told him that they were not the company's agents, and they did not know that such company had no authority to do business in the state, they were not personally liable for damages caused plaintiff by such company's insolvency and inability to pay the policy, though the transmission of the application made defendants the company's agents in violation of statute; plaintiff not having been misled by them.

7.  Insurance—Agents—Penal Liability—Acting as Agent Contrary to Statute.—The fact that persons who transmitted an application for an insurance policy for another were not personally liable to insured because they told him that they were not agents of the company would not relieve them from penal liability for acting as agents, in violation of the statute, for a company not authorized to do business in the state.

8.  Insurance—Actions—Defenses—Authority of Agents.—That persons who transmitted an application for an insurance policy for plaintiff, so as to make them agents within Ky. St. section 633, were not personally liable to him for damages caused by the company's inability to perform its contract, because they informed plaintiff that they did not act as agents would not be a defense, in an action against the company on the policy, on the ground that defendants were not its agents.

9.  Insurance—Liability of Agent—Actions—Pleading and Proof—Destruction of Property.—In an action against insurance agents to recover damages caused by fraudulent representa-

tions as to the solvency of the company, by which the policy
was issued, defendants, not having pleaded that plaintiff pur-
posely burned his property as a defense to the action, could
not give evidence thereof.

10.  Exceptions, Bill of—Time of Filing—Extending Time—Con-
sent.—Parties may consent to extending the time for filing
a bill of exceptions beyond a day in the succeeding term,
though Civ. Code Prac. section 334, provides that time may
not be given for preparing a bill of exceptions beyond a day
in the succeeding term; and, where when an order was
made extending the time for filing the bill beyond a day in
the succeeding term, the reasons for asking the extension
were stated in the presence of appellee's counsel, and they
made no objection to entry of the order, they thereby con-
sented to extending the time.

11.  Appeal and Error—Findings—Conclusiveness.—In view of
the trial court's having, at the second succeeding term,
permitted a bill of exceptions to be filed, over objection
then first made by appellee to the filing of the bill on a day
beyond the succeeding term, upon affidavits controverting
statements in appellant's affidavits, giving reasons for ex-
tending the time beyond a day in the first succeeding term,
the Supreme Court will not disturb the trial court's ruling
upon the questions of fact raised by the conflicting affidavits,
though the bill of exceptions stated that he did not dispose
of such questions; he having in fact ruled thereon in ap-
pellant's favor by allowing the bill to be filed.

G. B. LIKENS for appellant.

HEAVRIN & WOODWARD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

The appellant, Vertrees, who was the plaintiff be-
low, sought in this action to recover from the ap-
pellees, Head & Matthews, defendants below, $1,000,
upon the ground that, as insurance agents, they in-
duced him to take out a policy of insurance for that
sum in an insolvent company, not authorized to do
business in this state, thereby causing him to sustain
a loss in that amount. In the petition he averred in

substance that, desiring to obtain insurance upon a
stock of merchandise, he applied to Head & Matthews, insurance agents, for the purpose of getting
a policy; that they represented to him that they were
the agents for the Industrial Fire Underwriters of
Chicago, and that it was a good and solvent company, and a policy in it would be as safe as one issued by any other company of good standing; that
the representations as to the solvency of the company
were false and fraudulent, and known by them to be
so at the time they were made, but that he did not
know anything about the company, and relied upon
the representations and assurances made by Head
& Matthews, and upon their statements was induced
to, and did, accept a policy in the company, and pay
them the premium demanded, and did not attempt to
obtain insurance in any other company, as he might
have done. He further averred that during the life
of the policy his property was destroyed by fire, and
when he attempted to collect the insurance, he ascertained for the first time that the company was
utterly insolvent, if indeed such a company existed
at all, and that it had no authority to do business
in the state of Kentucky, nor did Head & Matthews
have license from the state to do business as agents
for it. A demurrer interposed to this petition was
overruled, and thereupon the defendants filed an
answer, controverting all the material allegations of
the petition, and affirmatively pleading that at the
time mentioned they were engaged in the business of
insurance agents, and the authorized agents for the
Phoenix Insurance Company and the North State
Company, and no others, and this fact was well
known to Vertrees; that Vertrees made application
to them for insurance, and they endeavored to place

his risk with the North State Company and also the
Phoenix Insurance Company, but each of these com-
panies refused to accept the risk; that thereupon they
notified Vertrees that they were unable to obtain in-
surance in either of the companies they represented,
but told him that they had received a circular letter
from a firm in Illinois offering to issue insurance on
risks such as his, and although they were not agents
for the company mentioned by the Illinois firm, and
had no knowledge of the standing of the company,
yet if he desired them to do so, they would, as an ac-
commodation to him, and not as agents for the com-
pany, forward his application to the Illinois firm;
that under these circumstances he requested them to
forward his application, which they did, and upon
receipt of the policy they delivered it to Vertrees up-
on the payment to them of the premium required.
They further set up that it was stipulated in  the
policy that, if the property insured was mortgaged,
the policy should be null and void, and that at the
time the policy was issued there was a mortgage lien
upon the property covered by the policy, although
Vertrees falsely and fraudulently represented that
it was free from incumbrances, and that this mis-
statement voided the policy.  Other pleadings com-
pleted the issues, and upon a trial of the case before
a jury each of the parties introduced evidence in
support of their respective contentions as set out in
the pleadings, and the jury, after being instructed,
returned a verdict for appellees.

As the case must be reversed for errors committed
by the trial court in giving instructions and admit-
ting incompetent evidence, it becomes necessary to
pass upon the question raised by counsel for appel-
lee that the petition did not state facts sufficient to

constitute a cause of action; the argument upon this point being: First, that the cause of action attempted to be stated is within that section of the statutes of frauds, providing that: "No action shall be brought to charge any person (1) for a representation or assurance concerning the character, conduct, credit, ability, trade or dealings of another, made with intent that such other may obtain thereby credit, money or goods; * * * unless the promise * * * assurance or representation * * * or some memorandum or note thereof be in writing and signed by the party to be charged therewith or by his authorized agent"—and, second, that an agent does not guarantee the solvency of his principal, and is not to be held personally liable although his principal may be insolvent.

That part of the statute of frauds invoked to defeat a recovery has no application to the state of facts set out in the petition. If a person, in violation of law, or deceitfully or fraudulently, or with knowledge of its falsity, makes a representation or assurance concerning the character or credit of another, it is not essential to maintain a cause of action against him that such representation or assurance shall be in writing. The statute does not embrace assurances or representations that are deceitfully or fraudulently made, or that are made with knowledge of their falsity, or in violation of a statute. It was not intended to save harmless from the consequences of false and fraudulent statements wrongdoers, or those who for purposes of gain or other motive would cheat or mislead. It was designed to protect persons who honestly and in good faith make assurances respecting the credit or standing of another, and should be confined to this character of cases. Upton v. Vane, 6 Johns. (N. Y.) 181, 5 Am. Dec. 210; Clark v. Dunham Lum-

ber Co., 86 Ala. 220, 5 South. 560; Dent v. McGrath, 3 Bush, 174.

In respect to the proposition that an agent does not guarantee the solvency of his principal, and is not personally liable for the failure of his principal to fulfill contracts, it may be said that generally an agent, acting within the scope of his authority and in the course of his employment, is not responsible for statements and representations that he makes. In making such statements and representations he acts for his principal, and the party who has been injured by them must look to the principal for indemnity or compensation. But if an agent knowingly makes false or fraudulent representations concerning any business matter intrusted to him as agent, or assumes in violation of a statute to act as agent, and the person with whom he is dealing is misled thereby to his prejudice, the agent will be personally liable. Upon this point it was said in Campbell v. Hillman, 15 B. Mon. 508, 61 Am. Dec. 195, that: "An agent is responsible individually to the purchaser for a fraud committed by him in the sale of property, although he does not profess to sell the property as his own, but acts throughout in his capacity as agent." It is the fraud or wrongful act knowingly practiced by the agent that makes him individually responsible. So long as the agent confines himself within the legitimate scope of his employment, if it be a legal one, he will not be personally liable for his acts or declarations. But when he exceeds the bounds of his author- ity, and knowingly undertakes to mislead or deceive, or acts contrary to law, the fact that he is acting as agent will not protect him from the consequences of his misconduct. We do not, of course, hold that the fact that the agent may make himself personally lia-

ble would have the effect of releasing his principal. We are not considering that phase of the question, and what we have to say only relates to the personal liability of the agent. These general principles applicable to all agents should be rigorously applied to persons who assume to act as agent for insurance companies in violation of law.

The Legislature has carefully devised and enacted a system of laws for the purpose of protecting the citizens of the state from insolvent and irresponsible insurance companies, and to administer these laws has established an insurance department having general supervision of insurance companies with authority to admit such companies as show themselves capable of performing their contracts, and power to deny the right to do business in the state to companies that have not complied with the law. And for the purpose of making more effective these laws it has provided certain conditions that insurance companies must comply with before they are permitted to do business in this state, and fixed penalties against any person undertaking to act as agent for an insurance company not authorized to do business in the state; Sec. 633 of the Ky. Statutes upon this point reading: "Sec. 633. Whoever solicits and receives applications for insurance on behalf of any insurance company, or transmits for any person other than himself an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall in any manner directly or indirectly, aid or assist in transacting the insurance business of any insurance company, shall be held to be an agent of such company within the meaning of this article, anything

Vertrees v. Head & Matthews.

in the policy or application to the contrary notwith-
standing.'' The statute further provides that an
agent who acts without a license shall be guilty of a
misdemeanor, and subjected to a fine. In view of this
statute and the other laws that have been in existence
for many years, there is little excuse for any person
acting as agent for a company that has not been per-
mitted by the insurance department to do business
in the state. Any person who is solicited to become
an agent, or who desires to represent a company, can
easily inform himself, by writing to the insurance
department whether or not the company proposing
to engage his service is authorized to do business in
this state. And so we think that, to protect citizens
of this state from being defrauded by irresponsible
companies, and to carry out the declared purpose of
our statute, and aid in preventing such companies
from having agents in the state, we are fully justified
in holding that any person who undertakes to act as
agent for a company not authorized to do business in
this state thereby personally assumes that the com-
pany for which he acts is solvent and able to perform
its agreements. If it is not, he makes himself indi-
vidually liable for any loss sustained on account of
its insolvency, or failure to fulfill its contract, en-
tered into with persons who did not know that the
company was not authorized to do business in the
state, and who believed that the person assuming to
act for it was its duly authorized agent. As between
the insured who in good faith accepts a policy believ-
ing it to be in a solvent and responsible company and
an agent who in violation of law induces him to take
it, the agent should bear the loss. But in this connec-
tion we may observe that the liability of the agent is
based upon the theory that the company, if solvent

and responsible, could have been compelled to pay the loss. And so, if for any reason the insured could not recover in an action against the company, neither can he recover in an action against the agent. An agent may make any defense the company could have made, and so, if Vertrees by false and fraudulent representations as to the mortgage voided the policy, he cannot recover in this action against the agent.

If in violation of the statute persons undertake to act as agents for companies not allowed by the insurance department to do business in the state, and thus impose upon and defraud ignorant and innocent people, it is no more than right that they should be required to make good the agreements proposed by the companies they assume to represent. This principle does not, of course, apply to agents for companies permitted to do business in the state. The agent of any company authorized by the insurance department to come into the state may safely represent that it is a solvent and responsible company; and, if it is not, he will not be held answerable for its default. So that, accepting as true the averments of the petition, it stated a good cause of action, and the acts of Head & Matthews in relation to this policy as set out in the petition constituted them agents of the company, and made them personally liable for its failure to perform the contract of insurance. Indeed it was not necessary to aver or prove that Head & Matthews made any false or fraudulent representations concerning the company or its solvency. If in fact it was insolvent, or it failed or refused to perform its contract without legal excuse, Head & Matthews became personally liable for the performance of all the agreements that it could have been required to discharge. On the other hand, if Head &

·Matthews were not, and did not assume to act as, agents for the company, and Vertrees knew they were not agents, and that the company was not authorized to do business in the state, they are not personally liable. The language of the section of the statute quoted is broad enough to make Head & Matthews agents upon their admission that they transmitted the application for Vertrees to the company. But, as between them and Vertrees, if they acted merely as an accommodation to him, and told him that they were not agents for the company, and it had no authority to do business in this state, and they had no knowledge of its condition or standing, then Vertrees did not innocently or in ignorance of the true state of facts accept the policy, and must be held to have assumed the risk of the solvency of the company and its ability to discharge the agreements under its contract. He was not deceived or misled. No fraud or wrong was practiced upon him. If the transaction was in violation of the statute, he was knowingly a party to it, and so cannot hold the agents personally responsible. Of course the fact that Head & Matthews are not under these conditions liable to Vertrees does not relieve them from penal liability for a violation of the statute, nor would it enable the company to defeat an action upon the policy, upon the ground that Head & Matthews were not its agents. As between the commonwealth and Head & Matthews and the company and them, they were its agents.

It does not seem necessary or proper that we should make any comment upon the evidence introduced by the parties, except to say that the testimony of the plaintiff entitled him to have his case submitted to a jury.

On another trial the court, in lieu of the instructions given, should instruct the jury that:

No. 1. If they believe from the evidence that Head & Matthews represented themselves to be, or by their acts or declarations held themselves out as, agents for, and procured and delivered to, Vertrees a policy in the Industrial Fire Underwriters of Chicago, Ill., and this company was not authorized to do business in this state, and Head & Matthews had no license from the insurance department permitting them to act as agent for it, and said company failed and refused to comply with the agreements and undertakings specified in the policy, and thereby Vertrees was damaged, they should find for him such sum as will compensate him for the loss and damage sustained by reason of the failure and refusal of the insurance company to perform its contract, not exceeding $1,000, unless they believe the state of facts set out in instructions Nos. 2 and 3.

No. 2. If they believe from the evidence that Head & Matthews informed Vertrees that they were not agents of the company, and had no authority to act for it, and he knew the company had no authority from the insurance department to do business in the state, and that they placed the insurance with the company as a mere act of accommodation to him, they should find for the defendants.

No. 3. If they believe from the evidence that at the time the insurance was obtained, there was a mortgage on the property, and this fact was unknown to Head & Matthews and the insurance company, and that the policy would not have been issued if it had been known there was a mortgage on the property, they should find for the defendant.

It is further complained that the court permitted evidence tending to show that Vertrees had himself voluntarily destroyed the stock of goods. This was error. In the absence of a pleading presenting this issue, evidence along this line was incompetent and highly prejudicial. If the appellees desired to show that the appellant purposely burned the property, thereby defeating his right to recover the insurance, they should have made this issue in the pleadings, and, failing to do so, should not be allowed to introduce evidence tending to prove this fact.

There is a motion by appellees to strike the bill of exceptions from the record that we will dispose of. The case was tried at the May term, 1909, of the Ohio circuit court; and, the motion and grounds for a new trial being overruled at that term, time was given until the fourth day of the succeeding term, which was in August following, to tender and file a bill of exceptions. At the August term, and before the expiration of the time given, an order was entered extending the time to file the bill to the fourth day of the succeeding November term. When the bill was tendered in due time at the November term, counsel for appellees objected to the bill being filed, but their objection was overruled, and it was allowed to be filed. The Civil Code provides, in section 334, that: "Time may be given to prepare a bill of exceptions, but not beyond a day in the succeeding term to be fixed by the court." The argument for the motion is that this provision of the Code is mandatory, and that time to tender and file a bill of exceptions cannot be extended beyond the succeeding term; and, as this bill was not filed until the second term after the trial, the court had no jurisdiction or power to allow it filed, nor to make the order at the August term ex-

tending the time to file to the November term. It appears from the record that the evidence on the trial was taken by an official stenographer, and that shortly after the May term of the court, and before the bill of exceptions had been prepared by the stenographer, she was taken sick, and for this reason alone unable to make up the bill of exceptions for the August term, and did not and could not have it ready until the November term. It is further shown by the affidavit of counsel for the appellant that at the August term, and when the motion was made and the order entered extending the time to the November term, the reasons why it became ncessary to ask an extension of time were stated to the court in the presence of counsel for the appellees, and that no objection was made by them to the motion or the entry of the order granting the extension. This being so, the motion to strike the bill from the record must be overruled. We said in Hill's Administrator v. Penn. Mutual Life Insurance Company, 120 Ky. 190, 85 S. W. 759, 27 Ky. Law Rep. 567, that: ''Although the Code provides that the time for filing a bill of exceptions shall not be extended beyond a day in the succeeding term, the parties may, by consent, extend the time; for, where a person has consented to an extension of the time, and thus induced his adversary to delay to file his bill of exceptions, he will not be allowed to take advantage of the delay which he himself thus caused.'' If the attorneys for the appellees were, as stated in the affidavit, present in court when the motion for an extension of time was asked, and the reasons given why it was wanted, and they failed to then enter objection to the order giving the time, they must be held to have consented to it. Walling

Vertrees v. Head & Matthews.

v. Eggers, 78 S. W. 528, 25 Ky. Law Rep. 1563. It is true that counsel for appellees filed an affidavit controverting the statements contained in the affidavit of counsel for appellant; but, in view of the fact that the judge of the trial court at the November term, with these affidavits before him, permitted the bill to be filed over the objection then made for the first time by counsel for appellees, we will not disturb his ruling upon this question of fact notwithstanding the statement in the bill that he did not dispose of the controverted question of fact, as when he allowed the bill to be filed, he did dispose of it in favor of the contention of counsel for appellant.

Wherefore, for the errors mentioned, the judgment is reversed, with directions for a new trial in conformity with this opinion.