## Stokes et al. v. Huddleston.

(Decided February 1, 1929.)

614

BERTRAM & BERTRAM for appellants.

DUNCAN & BELL for appellee.

OPINION OF THE COURT BY COMMISSIONER DRURY—Reversing.

The appellants, J. L. Stokes, O. F. Shearer, W. A. Dicken, and T. H. Dyer, are seeking to reverse a judgment for $4,500, recovered against them by the appellee,

Huddleston. In 1920, Huddleston purchased of one Ben Hancock, a small flourmill at Snow in Clinton county, Ky. In 1925, and continuously since his purchase of it, Huddleston was, and had been, endeavoring to insure this property. He applied to Stokes & Shearer, who maintained an insurance agency at Monticello, in Wayne county, and they were unable to procure the insurance for him. He then applied to Dicken & Dyer, who were engaged in the insurance business at Albany, in Clinton county, and they were unable to procure insurance for him. He had made such applications to others and had been uniformly unsuccessful. Huddleston and his brother-in-law, W. L. Stokes, made a survey of the property, made a diagram of it and arranged a schedule showing that he desired to procure $2,000 insurance on the building, $3,000 on the machinery in the building, and $1,000 on the stock of grain, flour, bran, etc., and this schedule was submitted to various insurance agencies. It was submitted to Stokes & Shearer, and they sent this schedule to various insurance agents and agencies, among which was the agency of Raymond O. Davis of New Albany, Ind., and he in turn sent it to J. P. Wilkinson & Co., of Wilmington, Del., and on December 3, 1925, Wilkinson sent to Stokes & Shearer an insurance policy for the sum desired, $6,000, purporting to have been issued by the United Society General Transportation Assurance & Reassurance Corporation of Naples, Italy. This policy was mailed by Stokes & Shearer to Dicken & Dyer at Albany, Ky., these two insurance agencies having some sort of working agreement with each other. Dicken & Dyer notified Huddleston that they had his policy, and Huddleston called at the bank where Dicken & Dyer were employed and had their office; the policy was delivered to him, and he paid Dicken & Dyer the premium thereon, $240. Dicken & Dyer deducted $12, their pro rata part of the agent's commission from the premium, and sent the policy to Stokes & Shearer, who likewise deducted therefrom their portion of the commission, and mailed the remainder to Davis in New Albany.

The personal property covered by this policy was partially destroyed, and the mill building was totally destroyed by fire on the night of May 31, 1926. The next day Huddleston notified Dicken & Dyer of the fire, and they at once notified Stokes & Shearer, and in a few days Stokes & Shearer sent word that an adjuster would be sent down and the loss adjusted. Weeks passed without

anything being done. Huddleston had several conversations with Dicken & Dyer and Stokes & Shearer, without result. Dicken prepared a proof of loss for Huddleston, which was mailed to Stokes & Shearer and finally mailed to Wilmington, Del., but was returned as not being sufficient. Thereupon Stokes notified Huddleston to this effect, and suggested he prepare a new proof of loss and send it to him, and he would forward it to the company. This was done, one copy of it was sent to Wilkinson & Co., at Wilmington, and the other copy to the company at Naples, Italy. The loss was not paid. Huddleston learned that this company had not been authorized to do business in Kentucky, and, relying upon the cases of Vertrees v. Head et al., 138 Ky. 83, 127 S. W. 523, Preston v. Preston, 163 Ky. 565, 174 S. W. 2, and Simons et al. v. Vaughn & Blackwell, 165 Ky. 167, 176 S. W. 995, sued Stokes & Shearer and Dicken & Dyer, which suit resulted in the judgment appealed from.

Shearer in his separate answer, as one of his defenses, had pleaded that this property was valued by the plaintiff, Huddleston, and that the values placed thereon by him were largely in excess of the real value, so much so, and so grossly so as to be fraudulent, and that these exaggerated values were so fixed by Huddleston with the intent to defraud the defendant, and were so fixed without the knowledge, consent, or approval of the defendant. He pleaded that the total cost of this property to the plaintiff was only $6,000; that the plaintiff had since the fire, sold a portion of the property for $2,100; that the lot upon which the mill was situated was worth $750; and that there was machinery situated upon the lot worth $1,200. He pleaded that the milling house at the time of the fire was not worth exceeding $1,000; that the value of the machinery then did not exceed $2,000, and that there was not at the time of the fire any wheat or flour in the mill and only about 200 pounds of bran, 10 bushels of corn, and a bushel and a half of rye; that the insurable value of the real estate covered by that policy did not exceed $1,000, and the insurable value of the machinery and other personal property did not exceed $1,500; that Huddleston knew these things and had fraudulently concealed the real value of the property.

Dicken & Dyer and Stokes filed a separate answer, and they, like Shearer, denied everything that had been said in the petition, and, like Shearer, pleaded that the value of the property covered by the policy had been

fraudulently misrepresented and grossly overstated, with the intention of defrauding the insurance company and the defendants; that the property was destroyed either by the gross and reckless carelessness and negligence of the plaintiff or was intentionally destroyed by him or some other person at his direction, for the fraudulent purpose of rendering the defendants liable for the loss. They further pleaded that, in the proof of loss which he had mailed to the company, Huddleston had claimed that he lost 700 bushels of wheat, worth $1,400; 4,000 pounds flour, worth $200; 3,000 pounds bran, worth $60; and 600 flour bags, worth $42. Those defendants charged that each and every statement in the proof of loss was untrue and false and so known to Huddleston when he made them, and that said false statements in the proof of loss render the policy void and unenforceable as provided in the policy. The provisions of the policy on that subject are:

"This entire policy shall be void if the insured had concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss."

Huddleston filed reply and denied these things, thus putting them in issue. The defendants united in a second amended answer, wherein they pleaded that this policy provided:

"This entire policy . . . shall be void . . . if there be kept, used, or allowed on the above described premises, benzine, benzol, . . . or other explosive, . . . or petroleum or any of its products of greater inflammability than kerosene oil, of the U. S. Standard," etc.

They then plead that, in violation of this provision of the policy and without their knowledge or consent and after the policy was issued, Huddleston placed upon the premises, and against or near the wall of the mill building, eight barrels of crude petroleum oil, which was highly inflammable, much more so than kerosene, and that said crude oil was on said premises, and against or near the wall of said building, at the time it was burned,

and that, by reason thereof, the hazards of the risk were greatly increased, and therefore the policy was rendered void, and that they had no notice of the placing thereof thereon until after Huddleston had testified during the trial. This amendment was filed during the progress of the trial, as appears from an indorsement on the back of it, and, from the order of the court and to the filing of it, the plaintiff objected and excepted. It was not controverted in any way.

The first ground relied on for reversal is alleged error of the court in admitting and rejecting evidence, and, as an introduction to that, as well as an introduction to an alleged error in the instructions, it will be necessary for us to discuss what we shall term the valued policy question, and to determine if this policy was such.

## VALUED POLICY QUESTION.

By chapter 19, of the Acts of 1916, section 700 of the statutes was repealed, and, in lieu thereof, there was enacted section 22 of that chapter, the same now being section 762a22, Kentucky Statutes, and which is commonly known as the valued policy law. This section 762a22 goes much further than did the old section 700, which it replaced, for it provides that this valued policy law shall not apply where the policy contains a coinsurance clause and is written at a reduced rate. The policy before us contained a coinsurance clause, and recites that it is written at a reduced rate; but section 762a22 goes further, and provides that the acceptance of such a contract shall be at the option of the insured, and that a reduced rate shall be given when such clause is used, and, further, that no such provision shall be valid, unless the filing back of the policy be indorsed, as provided in that statute, and that both the insurer and the insured shall sign the agreement contemplated. The filing back of this policy contains no such indorsement, and no such contemplated agreement was signed, so, that the provision rendering the valued policy law inapplicable, where a coinsurance clause is used, does not apply, and the valued policy law applies here. The defendants cite the case of Home Ins. Co. v. Crowder, 164 Ky. 792, 176 S. W. 344, in an effort to show that they were entitled to prove that this property had been fraudulently overvalued by the insured. By a reference to the case they cite, as well as by reference to the statute itself, it will be seen that, in

order to avoid the effect of this valued policy law for any fraud of the insured in fixing the value of the property, they must allege and prove not only the fraud, but that the company was misled thereby, which allegation they did not make.

## RULINGS ON EVIDENCE.

In the state of the pleadings, the court did not err in treating this as a valued policy, and excluding evidence relative to the value of the mill building. The defendants sought to show the value at which this property was assessed for taxation, and the court excluded it. In the state of the pleadings, that ruling was proper as to the mill building, because of the valued policy law, and unless it were shown that the personal property on hand and in the mill at the date of the fire was the same as that on hand and in the mill when this assessment was made, the exclusion of this assessment was proper as to the personal property. The court improperly excluded some evidence as to the value of the machinery. The court properly excluded the offered testimony of Ben Hancock to show the cost and fair cash value of the machinery that he put in the mill, because it is not shown in the evidence that the machinery put in the mill by Hancock is the same as that which was destroyed by fire. On redirect examination of the witness Jim Smith, the defendants asked him if he had heard the plaintiff make any statement relative to the wheat he had lost, and the court sustained plaintiff's objection thereto. Coming when it did, in the absence of any explanation that this question had been overlooked on direct examination, this was not erroneous. Stanley Upchurch testified for the plaintiff, and defendants sought to affect the credibility of his evidence by showing by Lee Capps the activities of Upchurch in the preparation of this case, and what Upchurch had said to him about his evidence. To make such evidence admissible, the defendants should have laid some foundation therefor, by asking Upchurch, when he was on the stand, about those things, and what he had said and done. If he had then denied saying and doing those things, then the defendants could have asked other witnesses about the things that Upchurch had said and done for the purpose of showing his interest, and affecting the credibility of Upchurch as a witness. The defendants recalled Upchurch and asked him about these things, and he denied them; but they did not thereafter

recall their witnesses to show what Upchurch had said and done.

### INSTRUCTIONS.

The court gave to the jury three instructions. No. 1 was:

"Gentlemen of the jury you will find for the plaintiff as follows:

"(A) The sum of $2,000 the amount of insurance on the mill building, with interest from Dec. 27, 1926.

"(B) You will also find for the plaintiff such sum as you may believe from the evidence was the reasonable value of the machinery and equipment totally destroyed by the fire mentioned in the evidence, and also such amount as you may believe from the evidence will fairly compensate him for such property injured and damaged by said fire. Your finding under this item not to exceed $3000 with interest from Dec. 27, 1926.

"(C) You will also find for the plaintiff such sum, under the third clause of the policy, as you may believe fairly represents the market value of the grain, flour and all other mill products contained in the mill building at the time of the fire mentioned in the evidence, and which you shall believe from the evidence was destroyed by said fire; your finding under this item not to exceed $1000 with interest from Dec. 27, 1926. You shall find for the plaintiff as above set out unless you shall believe from the evidence the facts set out in instructions Nos. 2 and 3."

In the state of the pleadings which, as we have said, failed to charge that the insurance company was misled by the alleged fraudulent valuation placed on this property by Huddleston, section (A) of this instruction No. 1 was correct; but we are not prepared to say as much for section (B), because the court failed to give the jury any measure by which to fix the recovery that might be had under section (B). The policy sued on contains this provision: "The company shall not be liable beyond the actual cash value of the property at the time any loss of (or) damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then

cost the insured to repair or replace the same with material of like kind and quality.'' This provision is a limitation on the recovery which may be had, but does not itself fix a measure of that recovery. As to the machinery and equipment, which the jury may from the evidence find was totally destroyed or injured beyond repair, the measure of Huddleston's recovery is the reasonable market value of it before the fire, and as to any machinery or equipment, which the jury may, from the evidence, find was not destroyed or can be repaired, the measure of recovery is the reasonable difference between the reasonable market value of such in the condition it was just before the fire and the reasonable market value thereof in the condition it was just after the fire. See Davis v. Marks, 203 Ky. 477, 262 S. W. 6113, and Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831.

While the defendants complained of section (C) of this instruction, that complaint was apparently perfunctorily made, and has not been discussed in their brief.

Instruction No. 2 has no place in this case, in view of our decision in Hayes v. Providence Citizens' Bank & Trust Co., 218 Ky. 128, 290 S. W. 1028. There was no complaint of instruction No. 3.

Defendants offered, and the court refused to give, instruction which we have marked ''X,'' which is:

''Or if the jury shall believe from the evidence that the plaintiff was guilty of false swearing which false swearing was willful on the part of the plaintiff, in making out his proof of loss two copies of which have been filed as evidence in this case, then such willful false statements upon the part of plaintiff avoid the policy sued on in which state of case the law is for the defendants and you will so find.''

In the state of the pleadings and the proof, this instruction was properly refused. The rule, relative to what misstatements of facts and values will vitiate an insurance contract, is stated in Richards on Insurance, p. 144, and was approved by this court in Western Assur. Co. v. Ray, 105 Ky. 523, 49 S. W. 320, 20 Ky. Law Rep. 1360, and to that rule we have since adhered. See Conn. Fire Ins. Co. v. Union Mercantile Co., 161 Ky. 718, 171 S. W. 407; Davis v. Henry Clay Fire Ins. Co., 216 Ky. 715, 288 S. W. 674; Hanover Fire Ins. Co. v. Coffman, 218 Ky. 568, 291 S. W. 725; Security Ins. Co. v. Rosenberg, 227 Ky. 314.

Upon the next trial of this case, if the pleadings and proof measure up to the requirements outlined in the authorities quoted, then this overvaluation in proofs of loss will, under the above authorities, be a question for the jury, and this instruction X, when so modified as to meet the Richards rule, should be given. Without discussing the pleadings of the defendants in detail, we will merely cite as an instance of their insufficiency this: They denied that Huddleston had lost 700 bushels wheat worth $1,400. Of course, that statement of Huddleston's was technically untrue, if he lost 700 bushels of wheat, and it was only worth $1,395, or if he lost 695 bushels of wheat worth $1,390; but such technical variations between his proof of loss and the facts, as actually disclosed, are not sufficient to authorize the giving of this tendered instruction X. "A mere innocent mistake or an exaggerated statement of value is insufficient for such purpose." See cases last cited.

The defendants offered, and the court refused to give the following instruction which we have marked "Y": "Or if you shall believe from the evidence that said building, machinery and mill products and grain were destroyed by the gross reckless carelessness or negligence of the plaintiff or were intentionally destroyed by him or by another at his instance or with his consent, then you will find for the defendants."

While the proof is by no means clear and convincing, still there was at least a scintilla of proof to support this, and, as this issue was made by the pleadings, the court should have given to the jury this instruction.

The defendants are contending here that they should have had some such instruction as instruction No. 2, prepared by this court in the case of Vertrees v. Head & Matthews, 138 Ky. 83, 127 S. W. 523, but the full and complete answer to that is they did not ask for it. See Sally v. Brown, 220 Ky. 576, 295 S. W. 890; Wolfinbarger v. Stanton, 220 Ky. 451, 295 S. W. 467; Deer Creek Mining Co. v. Moore, 200 Ky. 553, 255 S. W. 123; Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831.

The judgment is reversed, and the defendants are awarded a new trial.

The whole court sitting.