## Conn et al. v. Lexington Utilities Company.

(Decided February 25, 1930.)

R. W. KEENON and J. W. MILAM for appellants.

ALLEN, BOTTS & DUNCAN, WALLACE MUIR and W. W. MEEKS for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

The ultimate problem presented by this appeal is to determine the degree of care owed by a contractor who installs electric wires in a dwelling house. Some incidental questions, however, must be first determined. The action was predicated upon a contract by which the Lexington Utilities Company agreed with Mrs. Conn to wire her home in Lexington and to provide facilities for the use of electric lights. It was averred that the defendant had performed the contract in a negligent and unworkmanlinke manner so that the wiring was defective and brought about a short circuit which set fire to her home, inflicting serious damage upon it. The defendant denied that it entered into the contract, or that the wiring was defective, or that it caused the fire. It was further alleged as a defense that the plaintiff entered into a contract in writing with the Allen Electric Company to do and that it did, the wiring in question. The jury returned a verdict for the defendant and a new trial was denied, resulting in this appeal. It is insisted that a demurrer to the paragraph of the answer pleading that the contract was not with the defendant, but with another, should have been sustained. If the allegations were true, they constituted a perfect defense. The fact may have been admissible in evidence under the general denial, but we see no harm to appellants in permitting the defense to be affirmatively pleaded. Cf. Yellow Creek Coal Co. v. Lawson, 229 Ky. 245, 16 S. W. (2d) 1043.

It is complained that incompetent testimony for defendant was admitted and that competent testimony for plaintiffs was rejected. The complaint is addressed

to proof affecting merely the measure of damages. It was necessary for the plaintiff to prove the character and extent of the damages to her property caused by the fire. If the property was so badly injured that it was incapable of reasonable repair, the measure of damages was the difference in the market value of the property immediately before and immediately after the fire (Stokes v. Huddleston, 227 Ky. 613, 13 S. W. (2d) 784), and proof to that effect was proper. If the property was susceptible of repair and the evidence should tend to establish that fact, the measure of damages was the reasonable cost of repairing and restoring the building, evidence of that character was competent. Ben Gorham & Co. v. Carter, 228 Ky. 214, 14 S. W. (2d) 749. But the witness for plaintiffs testified that he did not know the condition of the house before the fire, and was not qualified to testify upon the point. The court, therefore, did not err in its ruling upon that question.

It is also complained that the court erred in an instruction on the measure of damages, but the claim presents no reversible error, since the jury did not allow any damages. It found either that the contract was not made with the defendant, or that it was not negligent in performing it, or that the negligence did not cause the fire. Where the jury allows no damages, an error in an instruction as to the measure thereof is not prejudicial. Jones v. Whitaker, 141 Ky. 484, 133 S. W. 223; Armstrong v. Vest, 223 Ky. 444, 3 S. W. (2d) 1073. If another trial is had, the instruction on the measure of damages will depend upon the proof then produced and must conform to the principles herein indicated.

This brings us to the important question presented respecting the degree of care owed by a contractor installing appliances in a building for the use of a dangerous voltage of electricity. The court instructed the jury that if they found from the evidence that the defendant agreed to install electric wiring in plaintiff's house to be used for carrying a current of electricity for lighting purposes, then it was the duty of defendant to exercise ordinary care to install said wires in a proper and workmanlike manner, and if the jury believed from the evidence defendant installed said wires, and failed to exercise ordinary care in doing the work in a proper and workmanlike manner, and as a direct and proximate result of such failure, if any, plaintiff's house was burned, then the jury should find for the plaintiffs.

There was no instruction defining ordinary care, or the duty of the defendant, beyond the requirements of the instruction quoted. It is sought to sustain the instruction on the ground that a contractor who merely installs electric wiring is under no duty beyond that of exercising ordinary care in the performance of the work. The case of Herzog v. Municipal Electric Light Co., 89 App. Div. 569, 85 N. Y. S. 712, is relied upon as authority for the argument. The case was decided by an intermediate appellate court, but the decision was affirmed by the Court of Appeals of New York without an opinion. 180 N. Y. 518, 72 N. E. 1142. It was an action for damages for the negligent burning of a building caused by defective wiring. The court said:

"What it (the contractor) undertook to do was to use the care and skill ordinarily used by those engaged in furnishing these appliances, and it is only for a neglect to perform this duty that it can be held liable. The workmen that were employed, so far as appears, were competent men to do the work. The materials that were employed were proper materials for the purpose. The method employed, including this molding, was that in general use at the time, employed in a large number of buildings which are specified in the evidence. It is true that several experts considered that the method was not safe; but a larger number of experts considered that it was a safe and proper method at the time it was applied, and was so considered by those engaged in the business of wiring for the use of electricity. The work was finished in August and the electricity was turned on about the tenth of September, and its use continued for nearly four months without disclosing any defect, although both in November and December there had been a leak in the roof which had discolored the wall along which this wire was carried. There was no evidence that at the time this work was done the roof had ever leaked, or that there was any reason to anticipate that the roof would leak and make the ceiling of this room damp so that the method adopted would be dangerous or improper; and there is no evidence that an electric wire used to carry an alternating current had ever set fire to a building when installed in the manner adopted by the defendant. The defendant might

have adopted a method which subsequent experience had shown would be safer than that adopted, but the defendant was not chargeable with the knowledge that has been acquired by experience with electricity after the work was done. The utmost that could be said from the evidence was that the method that should be adopted in doing such work was a matter about which experts differed, and that the defendant adopted a method which was approved by a majority of those having expert knowledge upon the subject. The obligation assumed by the defendant was not different from that assumed by a physician or surgeon called in to attend a patient who needed professional advice.''

It will be observed from the quotation that the rule there applied was very different from the instruction given in this case, and affords little aid in the solution of our present problem. It is well settled in this jurisdiction that it is the duty of those engaged in the manufacture, sale, and distribution, of electricity to exercise the highest degree of care for the security of human life. In one of the earliest cases this court declared:

''Electricity is a powerful and subtle force, and its nature and manner of use not well understood by the public, nor is its presence easily ascertained or determined. Its use for private gain is very extensive, and becoming more and more so. The daily avocation of many thousands, of necessity, brings them near to the subtle force, and it seems clear that the electric companies should be held to the use of the utmost care to avoid injuring those whose business or pleasure requires them to come near such a death-dealing force.'' McLaughlin v. Louisville Elec. Lt. Co., 100 Ky. 173, 37 S. W. 851, 855; 18 Ky. Law Rep. 693, 34 L. R. A. 812.

The doctrine of that case has not been departed from, but frequently reaffirmed, as may be seen from a reference to the cases collected in the opinion in Louisville Gas Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179, and McMurtry's Adm'x v. Kentucky Utilities Co., 194 Ky. 294, 239 S. W. 62. The rule is founded in practical necessity arising out of the great danger from electricity, and the difficulty, if not the impossibility, of discovering that danger or guarding against it. It was

adopted primarily for the protection of human life, but the fact that property alone is injured does not abrogate the rule. Every consideration impelling the application of the principle for the protection of persons applies with equal force to safeguard the habitations of people. Persons there may be directly injured by the electric energy or indirectly injured or destroyed in a fire ignited by it. The operation of the rule must be co-extensive with the causes and conditions that created it. Whilst it arose primarily for the protection of persons, it operates incidentally to protect the property of those to whom the duty is due, if it is injured by a violation of the duty. Curtis, the Law of Electricity, p. 609; Younie v. Blackfoot Light & Water Co., 15 Idaho, 56, 96 P. 193. But it is argued that the rule affects only those making, handling, or supplying, the electrical current, and not contractors who merely install the wires to carry the current. If the wires are installed for the purpose and with the knowledge that electrical currents are to be sent over them every reason dictates that the same duty should prevail since the same danger is present. Payton's Adm'r v. Childers' Elec. Co., 228 Ky. 44, 14 S. W. (2d) 208.

One who installs an instrumentality for a known use, which involves a great danger to life and limb, must exercise a degree of care commensurate with the danger for the protection of those who rightfully may be subject to the peril. The duty rests upon those who make and distribute the dangerous current, and upon those who provide the appliance and facilities as well. In Thomas v. Maysville Gas Co., 108 Ky. 224, 56 S. W. 153, 155, 21 Ky. Law Rep. 1690, 53 L. R. A. 147, it was held to be the duty of a gas company which sold electric current to a street railway company, to see that the street railway company performed its duty to have the wires insulated before they were charged with the dangerous force, and both were liable in damages for an injury resulting from defective wiring owned by the street railway company. In Macon v. Paducah Street Railway Co., 110 Ky. 680, 62 S. W. 496, 23 Ky. Law Rep. 46, it was held to be immaterial whether a hanging wire belonged to a defendant or another, since defendant's negligence consisted in allowing it to remain in a condition dangerous to persons using the street. In City of Owensboro v. Knox, 116 Ky.

451, 76 S. W. 191, 192, 25 Ky. Law Rep. 680, this court said:

> "The city, as a body corporate, has become the owner and operator of a plant for the generation and distribution of a most subtle and dangerous agency. The degree of care, prudence, and oversight required of it in the operation of the plant ought to be the same as if it were operated by an individual. The law, in allowing damages for a neglect of such duties, is not primarily to punish the negligent operator, but to protect and to compensate the injured person. If the corporation, whether municipal or private, embarks in a business so menacing to life and safety, it ought to use that degree of care that is commensurate with the danger it creates. It must know whether its appliances are reasonably safe, and in order. It will not be allowed to turn loose in a populous community such a deadly agency without first taking every reasonable precaution to prevent its injuring those unawares among whom it is sent, or else it must bear the consequences of such failure."

In Paducah Light & Power Co. v. Parkman's Adm'r, 156 Ky. 197, 160 S. W. 931, 933, 52 L. R. A. (N. S.) 586, the court, after reviewing the cases to which reference has been made, continued:

> "Keeping in mind the rule in this state that the utmost degree of care must be exercised to keep electric wires protected so as to prevent injury by coming in contact with them, it is difficult to understand upon what sound principle a distinction can be made between the measure of care that should be exercised to prevent danger to those coming directly in contact with the charged wire and to prevent danger to those coming in contact with another wire to which the charged wire has imparted its fatal energy. There seems to us no room or place for any distinction between the two conditions. If the charged wire is properly protected, it is comparatively safe under all circumstances; if it is not properly protected it is dangerous under all circumstances. This being so, there is no reason why the duty of exercising the same high degree of care to safely secure electricity should not be required under all circumstances. The negligence consists in the failure to

confine electricity to the place set apart for its use, and it is not so material how many independent agencies intervene if the injury is directly traceable to the failure to perform this duty.'' Lewis v. Bowling Green Gaslight Co., 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169; Lexington Utilities Co. v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173; Kentucky Public Service Co. v. Topmiller, 204 Ky. 196, 263 S. W. 706; Smith v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164.

Since the duty rests upon the electric company to keep and maintain the appliances and fixtures in a safe condition, and to exert the highest degree of care to that end, it seems logically to follow that an equal degree of care is necessary in making the original installation. One who engages in the business of installing electric wires must be held to the same degree of care as those who make and distribute the current, because the danger to be guarded against is the same. Electricity is not only dangerous, even deadly, but it is invisible, noiseless, and odorless, rendering it impossible to detect the presence of the peril until the fatal work is finished. It is for this reason that the high duty is imposed, and being imposed, a breach of it fixes liability for the resulting injury to those to whom the duty is owed. The duty is not different because the injury from its violation happens to property instead of to persons. It follows from the considerations suggested, and the authorities adduced, that those who install wires for the carriage of dangerous currents of electricity are under the same duty respecting it as those who manufacture and distribute that current. Payton's Adm'r v. Childers' Electric Co., supra.

It is insisted, however, that the appellee was entitled to a peremptory instruction, and therefore, the error in the instruction given was not prejudicial. Home Ins. Co. v. McCoy, 218 Ky. 365, 291 S. W. 353. The contention is unsound. There was testimony tending to show that the contract was made with the appellee, that the wires were installed by it, and that it was paid for the work. There was also testimony tending to show that the work was negligently done, and that the fire was caused by the defective wiring. It is true the evidence was cogently contradicted, but the conflict created a case for the determination of the jury.

There was no issue in the case justifying the second instruction to the effect that the company would not be

238

liable, if the wiring was properly installed, but subsequently became defective. No claim was made because the wiring had become defective after installation, or because the defendant had failed to discover that fact, or for failure to make proper inspection. The case for plaintiff was planted squarely on a breach of the contract of installation, and the instructions should have been confined to the issues made by the pleadings and the proof. Black Mountain Corp. v. Webb, 228 Ky. 281, 14 S. W. (2d) 1063.

The judgment is reversed for a new trial consistent with this opinion.