Charles Lee HEBERT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 17, 1978.

Discretionary Review Denied June 27, 1978.

Terrence R. Fitzgerald, Deputy Public Defender, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Miles H. Franklin, Asst. Atty. Gen., Frankfort, for appellee.

Before COOPER, HOWARD and PARK, JJ.

PARK, Judge.

The appellant, Charles Lee Hebert, and his co-defendant, George Edward Jones, were both convicted by a jury on an indict-ment for first degree robbery. (KRS 515.-020). Hebert and Jones were charged with robbing the Clarksdale Grocery on July 23, 1976, by threatening the owner, Tom Gurtz, with physical force while armed with pistols. Based upon the jury verdict, the Jefferson Circuit Court entered judgment sentencing Hebert to nineteen years imprisonment. On this appeal, Hebert raises numerous allegations of error. At oral argument, reliance was placed upon two issues: (1) whether the trial court erred in refusing to suppress evidence of Gurtz's identification of Hebert because of a confrontation at the police station following Hebert's arrest which was allegedly illegal; and (2) whether the trial court erred in refusing to permit Hebert to introduce evidence intended to show bias and hostility on the part of the arresting officer.

I

Hebert contends that his arrest without a warrant was not based upon probable cause and that his subsequent identification at the police station by the store owner, Gurtz, should have been suppressed as the product of his illegal arrest. Hebert relies upon the decisions in *Jones v. Commonwealth,* Ky. App., 556 S.W.2d 918 (1977); *Iles v. Commonwealth,* Ky., 476 S.W.2d 170 (1972); and *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

Shortly after the robbery, Detective Stephen Thompson of the Louisville Police Department received an anonymous phone call, apparently from an elderly woman. The caller told Detective Thompson that she had witnessed the escape of the robbers from the Clarksdale Grocery, and she gave a description of the getaway car including its license number. Detective Thompson received a second anonymous phone call, probably from the initial informant. The second call indicated that the getaway car could be found at the corner of Hancock and Liberty Streets which was in the general neighborhood of the Clarksdale Grocery. The caller also indicated that Hebert had been driving the car and that the owner of the car was William "Gunny" Ewing.

In the meantime, Gurtz and his employee, Joe Bailey, both gave descriptions of the robbers to the investigating officer, John Fey. Gurtz and Bailey described one of the robbers as being dressed in a striped shirt, cut-off blue jeans, red sneakers and red and white striped socks. Based upon his investigation, Officer Fey prepared a robbery report which was seen by Detective Thompson.

Detective Thompson and another officer then went to the Place-to-Play Tavern on Hancock Street where they located the alleged getaway car. The officers also found Hebert inside the Place-to-Play Tavern wearing a striped shirt, cut-off blue jeans, red tennis shoes, and red and white striped socks. Hebert's clothing conformed precisely to the description given by Gurtz and Bailey. Having viewed a full length photograph of Hebert taken shortly after his arrest, we can say that Hebert's attire was unique and unmistakable. A police officer finding Hebert dressed precisely as described by Gurtz and Bailey would clearly have had probable cause to arrest Hebert for the robbery. *Mears v. Commonwealth*, Ky., 499 S.W.2d 75, 77 (1973).

■ Unfortunately, the record of the suppression hearing does not establish the basis upon which Detective Thompson arrested Hebert. The record establishes that Thompson was in possession of Officer Fey's report, but the record does not indicate that this report contains the description of Hebert given by Gurtz and Bailey. The Commonwealth's Attorney suggested that the arrest was based in part upon Fey's report. The suppression hearing itself was rather chaotic. Hebert's trial counsel combined examination of Thompson with argument to and with the court. The suggestion was made that the arrest was illegal because Detective Thompson had testified at a preliminary hearing that he had gone to the Place-to-Play Tavern in response to the telephone tips. On his own, Detective Thompson offered to help clear up the controversy. However, at this point the trial court overruled the motion to suppress without hearing any further evidence.

We do not know whether the trial court concluded that the telephone tips gave Detective Thompson probable cause to arrest, whether the trial court accepted the Commonwealth's representation that Thompson relied upon Fey's report, or whether the trial court concluded that the legality of the arrest was immaterial. If it were essential to determine the legality of the arrest, we would remand the case to the trial court for a further evidentiary hearing and findings of fact by the trial court. *Lee v. Commonwealth*, Ky.App., 547 S.W.2d 792, 794 (1977). Under RCr 9.78, effective January 1, 1978, such findings are clearly required following an evidentiary hearing on a motion to suppress the fruits of a search.

■ Notwithstanding the inadequacy of the record relating to the lawfulness of Hebert's arrest, we conclude that remand for further proceedings on this issue is not required. Assuming for purposes of argument that the arrest was illegal because based only upon the two anonymous telephone tips, it does not follow that evidence of Gurtz's identification of Hebert at the police station was inadmissible at trial.

The identification of Hebert by Gurtz occurred under unusual circumstances. Shortly after he was taken to the police station, Hebert was escorted to another floor so that he might purchase a pack of cigarettes. The confrontation occurred as Hebert was returning to the interrogation room. He stepped off an elevator into the lobby just as Gurtz entered the police station. Gurtz, Detective Hubbard, and Detective Thompson testified that Gurtz made a spontaneous identification of Hebert as one of the robbers as soon as he spotted Hebert. Detective Thompson also testified that Hebert then lunged at Gurtz shouting obscenities. In Hebert's own words, the encounter occurred in the following manner:

Okay. Can you tell the jury what you said to Mr. Gurtz?
A. I walked up to him. I said, "Wait a minute, man." I tapped the officer on the shoulder and said, "Wait a minute." I said, "Here's the man right here," you know. But this Mr. Gurtz he wouldn't—

he was holding his head down like this. He had a patch on his head, a bandage or something, and he was holding his head down. So I said, "Man, will you tell these people that you know me, you know, but not personally," but before I could finish he yelled out, "You're damn right I know you. You're the one that hit me in my head with a pistol."

. . . . .

A. . . . Well, after he, you know, said that I was the one that hit him in the head with the pistol, well, that messed me up, you know, because I had not robbed nobody. So, I tried to grab him. I said "Wait a minute, man." You know, I was trying to explain myself a little better than what I was doing. And then Steve Thompson's partner, he pushed me back. He said, "No, just come on, come on," you know.

The confrontation between Gurtz and Hebert was completely spontaneous and unplanned.

During the trial itself, Gurtz again identified Hebert as one of the two robbers. Thus, we must determine the admissibility of both the in-court identification and the out-of-court identification of Hebert at the police station.

Gurtz's in-court identification of the accused was clearly admissible. Gurtz had ample opportunity to observe Hebert during the robbery. Gurtz actually recognized Hebert as a customer in the grocery store, although Gurtz did not know Hebert by name. There is nothing in the record to indicate that the in-court identification was the "fruit" of an illegal arrest. It would be unthinkable to hold that Gurtz was forever precluded from identifying Hebert merely because he had complied with the request of the police to come to the station and had there identified Hebert spontaneously in the lobby. *Payne v. United States,* 111 U.S.App.D.C. 94, 98, 294 F.2d 723, 727 (1961).

In *Jones v. Commonwealth, supra,* the witness had made an out-of-court identification of the witness based upon a photograph taken of the accused following an illegal arrest. In that case, the photograph, which was itself the "fruit" of the illegal arrest, was impermissibly suggestive. The photograph of the accused bore a date which was the day following the robbery and contained the legend "ROB." This court held that a hearing was required to determine whether the witness's in-court identification was tainted. *Jones, id.,* 556 S.W.2d at 921. However, in this case, there was nothing suggestive about the circumstances surrounding Gurtz's identification of Hebert in the lobby of the police station. No hearing was required. *Summitt v. Commonwealth,* Ky., 550 S.W.2d 548, 550 (1977).

Nothing suggests that Gurtz's recollection of the robbery was in any way tainted by the fact that Hebert's arrest might have been illegal. *Crews v. United States,* D.C. App., 369 A.2d 1063, 1072 (1977). *See also United States ex rel. Pella v. Reid,* 527 F.2d 380 (2d Cir. 1975). This case is clearly distinguishable on its facts from the decision in *United States v. Edmons,* 432 F.2d 577 (2d Cir. 1970). In that case, in-court identifications were suppressed when the defendants had first been identified following illegal arrests. Members of the FBI conducted a neighborhood dragnet operation for the purpose of bringing into headquarters as many young black males as possible. The arrests were flagrantly illegal and were made for the precise purpose of securing identifications which could not otherwise be obtained. Unlike the situation in the *Edmons* case in which the identity of the defendants was completely unknown, the investigation in this case had focused on Hebert whose identity was known. There is nothing in this record to indicate egregious police misconduct. We hold that Gurtz's in-court identification was admissible.

Turning to the out-of-court identification of Hebert at the police station, we note that the confrontation between Gurtz and Hebert occurred within hours of the robbery. Gurtz's memory was fresh, and there was nothing in the circumstances surrounding the identification that was calculated to suggest that Gurtz should identify Hebert

on the basis of some fancied recognition. The identification was spontaneous and unexpected. As a matter of Kentucky evidentiary law, evidence of the identification at the police station was admissible to corroborate Gurtz's in-court identification of Hebert. *Brown v. Commonwealth,* Ky.App., 564 S.W.2d 24 (this day decided).

Evidence of the police station identification should be suppressed only if it were the "fruit" of an illegal arrest. That question should be determined by applying the rule enunciated in *Wong Sun v. United States,* 371 U.S. 471 at 487–88, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441 (1963):

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959).

We conclude that Gurtz's identification of Hebert in the lobby of the police station was not the result of any police "exploitation" of an illegal arrest.

In *United States v. Young,* 512 F.2d 321 (4th Cir. 1975), the defendant was arrested a short time after a robbery. When he arrived at the police station, the defendant was immediately identified as one of the robbers by the victim who was at the station. Assuming that the arrest was illegal, the court held that the victim's identification of the defendant at the police station was not the "fruit" of the arrest. In holding that there was insufficient proximate connection between the arrest and the identification, the court stated:

> It is purely happenstance that Bernstein was taken to the police station rather than to the roadblock where he could have identified Young prior to arrest. Once the suspected culprits were known, Bernstein could just as well viewed them

as they left their homes the next day. . . . We hold that an unlawful arrest does not per se make inadmissible positive identification testimony that is otherwise competent.

*Id.* at 323. If anything, the unplanned meeting in the lobby of the police station was to Hebert's benefit. There was a complete absence of any suggestiveness which might have been present had the police taken Gurtz to the Place-to-Play Tavern to view Hebert before the arrest.

In *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972), the Supreme Court of Pennsylvania held that evidence of an out-of-court identification should not be suppressed solely on the theory that it was the fruit of an illegal arrest. The court stated:

> No law abiding society could tolerate a presumption that but for the illegal arrest the suspect would never have been required to face his accusers. Thus, we conclude that the only effect of the illegal arrest was to hasten the inevitable confrontation and not to influence its outcome.

> . . . . .

> . . . We cannot assume that but for the illegal arrest the appellant would have remained at large indefinitely. In either case it is clear that the illegality contributed neither to the knowledge of the witnesses nor to the accurac[ies] of their identifications.

293 A.2d at 37–38. Likewise, Hebert's arrest did not contribute to Gurtz's knowledge, nor to the accuracy of his identification.

In *State v. Lynch,* Mo.App., 528 S.W.2d 454 (1975), the defendant claimed that the trial court erred in admitting evidence of a pretrial identification by the victim, Mrs. Daugherty. In holding that the identification was not the product of an unlawful detention, the court stated:

> [T]he identification testimony was admissible, because the identification by Mrs. Daugherty was not causally connected with the arrest but rather with the robbery itself, and because the identifica-

tion testimony emanated from a source independent of the arrest, i. e., her recollections and observations at the time of the robbery. Mrs. Daugherty testified that the appellant was in visual proximity with her for at least fifteen minutes under conditions which she described as well-lighted. The defendant stood face-to-face with Mrs. Daugherty on several occasions close enough to take money from her brassiere and close enough to strike her on the head several times with a pistol. Mr. Daugherty was able to give the police a detailed description of her assailant and was positive about her identification. Under these circumstances, it is clear that her identification testimony had an origin and a basis independent of either the arrest or the lineup and was, therefore, admissible.

*Id.* at 459–60. In the present case, Gurtz had given a detailed description of the robber which fitted Hebert exactly. Although not knowing Hebert's name, Gurtz knew him by sight as a prior customer of the grocery store. Gurtz had ample opportunity to observe Hebert during the robbery itself.

This case is clearly distinguishable on its facts from the decision of this court in *Jones v. Commonwealth, supra.* In the *Jones* case, the police did exploit the illegal arrest by taking the defendant's photograph which was used as a basis for the identification of the defendant by the victim of the robbery. Unlike the unplanned and spontaneous identification in this case, the photograph taken following the illegal arrest in the *Jones* case was itself impermissibly suggestive. This court held that the photograph and evidence of the out-of-court identification should have been suppressed as the "fruits" of the illegal arrest. In the present case, Gurtz's identification of Hebert in the lobby of the police station had a basis completely independent of Hebert's arrest. The trial court did not err in admitting evidence of the confrontation between Gurtz and Hebert.

## II

During the trial, Hebert sought to impeach Detective Thompson by showing bias and hostility. When Hebert sought to testify that Detective Thompson had arrested him and his co-defendant, Jones, on a previous robbery charge, both the Commonwealth and Jones's trial counsel objected. The trial court sustained the objection and prohibited Hebert's trial counsel from further inquiry into the prior arrest. By way of avowal, Hebert's trial counsel stated that Hebert would testify that the charges were dismissed on the initiative of the Commonwealth because of insufficient evidence and that Detective Thompson had promised to "get them for something else." Hebert contends that the action of the trial court deprived him of his sixth amendment right of confrontation. We disagree.

First, on cross-examination, Detective Thompson was not interrogated regarding the prior arrest and conversation with Hebert. Since no foundation had been laid for Hebert's testimony concerning prior statements showing bias and hostility on the part of Detective Thompson, the testimony was properly excluded. *Sebastian v. Commonwealth,* Ky., 436 S.W.2d 66 (1969); *Horner v. Commonwealth,* 19 Ky.L.Rep. 710, 41 S.W. 561 (1897); *Stokes v. Huddleston,* 227 Ky. 613, 13 S.W.2d 784 (1929); *McCormick on Evidence* § 40 at 81 (2d Ed.1972); 3a *Wigmore on Evidence* § 953 (Chadbourn rev.1970).

Second, the objection was not properly preserved by avowal. RCr 9.52 provides that an avowal must be made in the manner provided in the Civil Rules. Under CR 43.10, the *witness* must offer the testimony which will constitute the avowal. The examining attorney is not permitted to state the substance of the witness's proposed testimony. Clay, *Ky.Practice,* Civil Rule 43.10, Comment 2 (3d Ed.1974). We also note that Jones's trial counsel was objecting to the testimony because Detective Thompson was prepared to testify that the prior robbery charge had been dismissed only because the witnesses were afraid to testify against Hebert and Jones.

Under the circumstances, the trial court did not commit prejudicial error in sustaining the objections to Hebert's efforts to impeach Detective Thompson.

### III

The court has considered the other issues raised in Hebert's appellate brief, but which were not pressed at oral argument. We find each of the other issues to be without merit. Rather than extend this opinion further, we state our reasons for rejecting the other arguments in a supplemental opinion.

The judgment of the circuit court is affirmed.

All concur.