CASE 77—ACTION TO RECOVER DAMAGES FOR PERSONAL INJURIES—APRIL 26.

## Macon v. Paducah St. Ry. Co., &c.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF FOR ONLY A PART OF THE SUM HE CLAIMS AND HE APPEALS. REVERSED.

SPECIAL DAMAGES—PLEADING—MEASURE OF DAMAGES FOR PERSONAL INJURY—GROSS NEGLIGENCE—CARE REQUIRED IN USING ELECTRICITY—BURDEN OF PROOF—PUNITIVE DAMAGES—CONTRIBUTORY NEGLIGENCE.

Held: 1. Where the petition in an action to recover damages for personal injuries does not specify any sum expended for medical service, there can be no recovery on that account.

2. It was error to instruct the jury that plaintiff was entitled to recover "for loss of capacity to perform the kind of labor for which he was fitted," as it was not for the court or jury to determine the kind of labor for which plaintiff was or might become fitted.

3. The court having instructed the jury that it might award punitive damages if they believed defendant was guilty of gross negligence, it was error to define gross negligence as "either an intentional wrong or such a reckless disregard of security and the right as to imply bad faith."

4 Persons using electricity must exercise the highest degree of care for the protection of all persons in all places where such persons have a right to be, and therefore in an action charging negligence in the use of electricity it was error to instruct the jury that ordinary negligence is the want of such care "as is commonly exercised by persons of ordinarily prudent habits placed under like circumstances."

5. It is error to instruct the jury upon which party the "burden of proof" rests.

6. Where defendant electric street-railway company permitted a wire to hang from one of its guy wires so that it became charged with electricity, resulting in injury to plaintiff, who seized it in passing along the street, the question whether the company, in permitting the wire to hang down, was guilty of gross negligence authorizing punitive damages was for the jury, it appearing that the wire had been hanging from defendant's wire for two or three weeks, and there being some evidence tending to show that defendant's agent or servant had actual notice thereof.

7. It is immaterial whether or not the hanging wire belonged to defendant, as defendant's negligence, if any, consisted in allowing it to remain in a condition dangerous to persons using the street.

8. The question whether plaintiff, a boy twelve years old, was, considering his age and capacity, and all the other circumstances, guilty of contributory negligence in taking hold of the wire after being warned of the danger of doing so, if in fact he was so warned, was for the jury.

BISHOP & HENDRICKS for appellant.

Willie Macon, a small negro boy, was sent by his mother on some errand to a neighbor's house. He had to pass along Sixth street towards Norton in the city of Paducah, and about forty feet from the corner of Sixth and Norton, he came to a loose wire, which seems to have been attached to one of defendant's wires, either a guy wire or an electric railway wire, and was permitted to hang down near the sidewalk on Sixth street. He caught hold of this wire and was terribly burned, his right hand almost completely and permanently destroyed. He was also burned on his side to the hollow of his body, and one of his lungs very much injured.

The proof in this case shows that at the place where the injury occurred there was no proper insulation of the defendant's wires, that the wire had been hanging at that place for more than two weeks.

We claim that it was the duty of the defendant to keep its wires perfectly insulated at all points on the public streets, and

also to keep a lookout over its electric system and suffer no wire of their own or any telephone company or individual to fall across its wire, and hang down so as to endanger the life of any one on the streets of the city.

We also claim that the court grossly misinstructed the jury in its definition of ordinary care and of gross negligence, as repeatedly defined by this court. The instruction given by the court is as follows:

1. "The court instructs the jury that ordinary care is such as is commonly exercised by persons of ordinarily prudent habits, when placed under like circumstances, and therefore ordinary negligence is the want of ordinary care. Gross negligence is the higher degree of negligence, and is an intentional wrong, or such a reckless disregard of security and right as to imply bad faith." In fact we claim that all the instructions, Nos. 1, 2, 3, 4, and 5, given by the trial court are erroneous and misleading, and do not present the law governing this kind of case.

### AUTHORITIES.

L. & N. R. R. Co. v. McCoy, 81 Ky., 403; McLaughlin v. Lou. Elec. Light Co., 18 Rep., 693; Overall v. Lou. Elec. Light Co., 20 Rep., 759; L. & N. R. R. Co. v. Robinson, 4 Bush, 509; Haynes v. Gas Co., 114 N. Y., 211; Thompson on Neg., sec. 65; Clements v. Elec. Light Co., 44 L. A. R., 695; Schweitzer's Admr. v. Citizens Gen. Elec. Light Co., 21 Rep., 608.

(No other brief in the record.)

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

This action was instituted by the appellant against the appellees, Paducah Street Railway Company and Paducah Electric Light Company, to recover damages for injury sustained by the gross negligence, of the defendants. The substance of the negligence complained of is: That the defendants had established various posts and overhead wires along and over the streets of the city of Paducah, and were engaged in furnishing electric power to run and operate a street railway in said city, and to furnish lights to the inhabitants thereof. That about April 26, 1898, the defendants had, at or near the corner of Sixth and Norton streets, and as part of said electric

system, a post, and about forty feet from the corner of
Sixth street stood another post, and to these posts were
attached electric wires charged with electricity, and were
being used by the defendants in the transaction of their
business; and at or near said post and about forty feet
from the corner of Sixth and Norton streets, on
South Sixth street, the said defendants suffered
and permitted what is known and commonly called
a "live wire"—that is, a wire fully and heavily charged
with electricity—to hang down from one of their posts
so operated and used by them, to and near the ground on
said Sixth street. That the said "live wire" so charged
with electricity was dangerous to the lives and safety
of all persons traveling along or across said street. That
plaintiff was an infant about twelve years of age, and was
sent by his mother to a neighbor's, and it was necessary
for him to pass under or near said "live wire," and while
so engaged in passing along said public street as aforesaid,
without any negligence on his part, he came in contact and
collision with said "live wire" so hanging down from de-
fendant's post to, on, or near the surface of said street
and ground, and was thrown by the electric current im-
parted to him from said "live wire" to the ground, and
was terribly burned and injured, so as to make him a
cripple for life, and was burned to the hollow of his body,
his thumb burned off entirely, and his body otherwise
burned and injured. It was further alleged that the said
live wire was by defendants negligently suffered and per-
mitted to hang down from the post aforesaid to the ground
so as to be exceedingly dangerous to persons traveling
thereon, and that plaintiff suffered the burns and injuries
in consequence of the gross negligence of both the defend-
ants in suffering and permitting said live wire to so hang

as aforesaid; that each and both defendants knew of the dangerous condition of said live wire, or could have known by ordinary diligence, and could have, by the use of ordinary diligence, or any diligence, repaired said wire, removed and placed same at such elevation from the ground as that no harm could or would have resulted to any one; that it was their duty to do so, and the defendants, well knowing the dangerous condition of the live wire, permitted it to remain in said condition for more than two weeks before said injury; that plaintiff was damaged by the burns and injuries aforesaid in the sum of $10,000. The answer may be treated as a denial that they suffered the live wire charged with electricity to hang down as charged by plaintiff, or that they knew, or had reason to know, that any live or other wire at the time mentioned was hanging from a wire used in their electric light or power plant at or near the place mentioned by plaintiff; nor did they have any information that such a wire was so hanging; that, if such wire had been hanging from their system so as to touch the ground, it would have manifested itself in the operation of their electric plant; that after the accident complained of they discovered the wire hanging from the electric wire which was a part of their system, but that said wire so hanging down within in a few feet of the ground was not a wire used, or ever had been used, or could ever have been used in the operation of defendants' business; but that said wire was a loose wire, which had been used by the East Tennessee Telephone Company in their system of operating an electric telephone, and that same had been cut by the said telephone company, or some stranger not connected in any way with these defendants, and had been allowed to fall across the wire belonging to these defendants, without their

knowledge or consent, and that defendants did not know or had no information that said wire was so hanging; and they deny that said wire was there by the carelessness or negligence of defendants. Defendants admit that plaintiff was injured by coming in contact with said wire, but aver that he willfully and knowingly caught hold of said wire with his hands well knowing, and after being informed, that, if he did so, it would shock and burn him; that he was informed immediately before he caught hold of the wire that, if he did so, it would shock and burn him, but he stated that he was not afraid of same, and, against the protest and advice of his friends, he willfully caught hold of said wire, and was thus burned; which negligence is pleaded in bar of plaintiff's right to recover. It is further stated in the answer that "defendants had no knowledge or information as to whether said wire had remained hanging towards the ground for two weeks or not." It is further denied that plaintiff was damaged in the sum of $10,000, or any other sum. By an amended petition it is alleged, in substance, that the live wire which injured plaintiff was either a wire which had been used by the East Tennessee Telephone Company, or by some other person unknown, or else it was the wire of defendants; that one or the other of these things is true, but plaintiff does not know which. The amended petition also repeats the other averments of negligence charged to the defendants. The reply of plaintiff is a traverse of all the defensive averments in defendants' answer. By a further amended petition, it is alleged that defendants' electric system in the city of Paducah, and especially at the point where the wire hung down with which the plaintiff came in contact was defectively and insufficiently insulated. They say that especially at the time and place where the said

hanging wire was that caused the injury to plaintiff, the place of contact between the wires was not insulated at all; and, if it was insulated, it was defectively and insufficiently done.     It was further alleged that defendants could have kept said wires at the place of contact so insulated as to have made hurt or injury to the plaintiff impossible; that plaintiff had a right to believe that defendants had performed their duty; and that his taking hold of same, if he did so, was not contributory negligence on his part, as he is and was a boy of only twelve years of age at the time.  The answer to the amended petition again denies negligence, or that it omitted to do anything which it was its duty to do.     It denies that its system of wires was insufficiently insulated. tIt says where plaintiff was hurt the wires were insulated in the most approved and scientific manner.  It is denied that defendats could have kept said wires at the place of contact where the injury occurred so insulated, or to have made hurt or injury to the plaintiff impossible.  The contributory negligence of plaintiff is again pleaded and relied on. Upon final trial, the jury returned the following verdict: "We, the jury, find for the plaintiff, Willie Macon, in the sum of $350.00.  T. S. Long, One of the Jury."  Thereupon the court rendered a judgment in favor of plaintiff against the Paducah Street Railway Company for said sum of $350, with 6 per cent. interest and his costs.  The defendants filed grounds and moved for a new trial, which motion, however, was afterwards withdrawn.  The plaintiff also filed grounds and moved for a new trial.  The substance of the grounds relied on is the admission of improper evidence against plaintiff, and rejection of competent evidence offered by the plaintiff; error of the court in giving instructions 1, 2, 3, 4, and 5, and in refusing

to give instructions "v," "w," "x," "y," and "z." Plaintiff's motion for a new trial having been overruled, he prosecutes this appeal.

Instruction No. 1 defines ordinary care to be such as is commonly exercised by persons of ordinarily prudent habits and placed under like circumstances, and therefore ordinary negligence is the want of ordinary care. Gross negligence is a higher degree of negligence, and is either an intentional wrong or such a reckless disregard of security and the right as to imply bad faith. Instruction No. 2 tells the jury that the burden of proving the negligence charged is on the plaintiff. No. 3 should not have been given. It is open to the construction that, unless the defendants were the owners of the live wire in question, plaintiff could not recover, and it is open to other objections not necessary to state. No 4 should not have been given. We do not think that the petition specifies any sum expended for medical service, and, if this is true, no recovery should have been allowed for medicine or medical attention. The court also allowed for loss of capacity to perform the kind of labor for which he was fitted. This was error. It is not for the court or jury to undertake to determine the kind of labor for which he was or might become fitted. Instruction "z" is substantially correct, and should have been given. The definition given by the court of gross negligence in instruction No. 1 is erroneous, and in conflict with the opinion of this court in Railroad Co. v. McCoy, 81 Ky., 411. In that case the court below gave the following instruction: "The court instructs the jury that gross negligence is that degree of negligence which indicates intentional wrong to others, or such a reckless disregard of their security or rights as to imply bad faith." This court ex-

pressly held that the foregoing instruction was erroneous, and, recognizing that a similar instruction had been sus-tained in the case of Railroad Co. v. Robinson, 4 Bush, 509, expressly overruled the last-named case in so far as it sus-tained such a definition of gross negligence. In further discussion of the question this court referred to the deci-sion of Railroad Co. v. Herrick, 13 Bush, 127, which said "that punitive damages were recoverable if the proof showed that the company failed to use such diligence in keeping its railroad bridge in repair as careless and in-attentive persons usually exercise in the prosecu-tion of the same, or of business of like character;" that "the absence of slight care in the management of a railroad train or in keeping a railroad track in repair is gross negli-gence;" and that "it was not necessary to show the absence of all care, reckless indifference, or intentional misconduct, to make out gross neglect. These alleged definitions of gross neglect are, rather, the statement of instances show-ing gross neglect than a definition embracing every state of facts constituting such neglect. It is certainly true, in the management of a railroad, that the absence either of all care, or the loosest degree of care, or of slight care, is gross neglect; but it does not follow that the presence or exercise of slight care in the general sense and ordinary application thereof in matters of little or no peril to life negatives the existence of gross neglect charged in the management of a railroad where human life is constantly in more or less danger." The court further said: "In the management of a railroad, or any department thereof, gross neglect is the failure to take such care as a person of common sense and reasonable skill in like business, but of careless habits, would observe in avoiding injury to his own person or life under circumstances of equal or similar

danger to those which may be under investigation." The
definition of ordinary care given in said instruction No. 1
is erroneous in this case for the reason that it has been re-
peatedly held by this court that persons using electricity
either for lighting or for propelling cars, or other busi-
ness, must exercise the highest degree of care for the pro-
tection of all persons in all places where such persons have
a right to be.   See McLaughlin v. Light Co. (Ky.), 37 S. W.,
851, 34 L. R. A., 812; ( 18 Ky. L. R., 693) Overall v. Light
Co. (Ky., 47 S. W., 442; (20 Ky. L. R., 759) Schweitzer's
Adm'r v. Electric Co.,(Ky.) 52 S. W., 830; (21 Ky. L. R., 608)
Thomas' Adm'r v. Gas Co. (Ky.), 56 S. W., 153.    It will
thus be seen that the court erred as to instruction No. 1.
The jury were told in No. 2 that the burden is upon the
plaintiff to prove negligence. This court has often con-
demned instructions stating upon whom the burden of
proof rested, or similar expressions.   No. 5 is substantially
correct.   The evidence in this case tends to show that the
live wire was fastened at one end of one of defendants'
posts used for the purposes indicated in the pleadings, and
also wrapped around one of the wires which are called "guy
wires," which extend from one post to another.   Some of
the testimony conduces to show that these wires were for
the purpose of preventing the posts from falling down in
the event one should give way.   The defendants' theory
seems to be that the wire in question did not belong to
them, or either of them, but was a telephone wire that had
once been run along there by a telephone company, and by
some means got wrapped around the guy wire aforesaid.
The evidence of plaintiff shows that all telephone wires had
been removed away from there some time before.   It also
appears with absolute certainty that the wire in question
had been hanging down from defendants' wire for two or
three weeks, and there is some evidence tending to show

that defendants' agent or servant had actual notice there-
of. We are, however, of the opinion that it is a matter of
no consequence who was in fact the owner of the wire in
question. The negligence of defendants, if negli-
gence at all, consisted in allowing the wire to
remain in a condition dangerous to persons us-
ing the street. It will be readily admitted that a
live wire in the position this one was shown to be was ex-
tremely dangerous to the public, and, if defendants knew,
or could, by such diligence as the law requires of them,
have known, of the condition of the wire it' would have
been gross negligence on their part to have permitted the
wire to so remain. It may be taken as true that defend-
ants did not intend a current of electricity to flow along
the guy wires before mentioned, nor intentionally turn
such current upon the guy wires, or the wire from which
the injury directly resulted. It seems, however, absolute-
ly certain that there was a current of electricty flowing
along the wire which the plaintiff took hold of; or, in
other words, it was a live wire. No person undertook to
state as a matter of fact how the electricity reached the
down-hanging wire, nor do we deem it a matter of im-
portance in this case whether it became alive because
of a current of electricity reaching the guy wire, or wheth-
er it was made alive by some defect in the apparatus or
wires or machinery used in propelling the street cars.
It is certain that if the wire in question had not been
hanging down, the injury would not have occurred. It
was for the jury to determine from the facts and under
proper instructions as to the degree of negligence com-
plained of as well as to whether or not the wire was in fact
hanging down as described by the witnesses, as well as to
consider what length of time it had been in that condi-

tion.   If the evidence adduced is to be believed, it follows that the defendants were guilty of gross negligence, as well as guilty of the failure to exercise that high degree of care which the law requires of electric companies. It was also the province of the jury to determine whether or not plaintiff had in fact been warned of the danger of taking hold of the wire, and, if so whether, considering his age of capacity, and all the other circumstances as shown by the evidence at the time he did take hold of it, he was guilty of such contributory negligence as barred his right to recover in this action.   For the reasons indicated, the judgment is reversed, and cause remanded for a new trial upon principles consistent with this opinion.