## McMurtry's Administratrix v. Kentucky Utilities Company.

(Decided March 24, 1922.)

### Appeal from Hardin Circuit Court.

1. Electricity—Care in Manufacture, Sale and Distribution.—Common prudence dictates that in the manufacture, sale and distribution of electricity the highest degree of care must be exercised for the protection of others from this subtle and dangerous agency.

2. Master and Servant—Action for Personal Injuries—Evidence—Instructions.—In an action for damages caused by death resulting from coming into contact with a live electric wire, the trial court submitted the case to the jury under instructions as favorable to appellant as the law and facts warranted, and the jury returned a verdict in favor of the utilities company, which verdict is fully sustained by the evidence.

HAYNES CARTER for appellant.

GORDON & LAURENT and L. A. FAUREST for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In July, 1920, Arthur McMurtry, a young man about twenty-five years of age and in the employ of a telephone company as lineman, was killed while in the line of his duty by coming in contact with a live wire of the utilities company carrying heavy voltage of electricity. His wife qualified as administratrix and brought this action in the Hardin circuit court against the utilities company to recover $30,000.00 damages for his death. A trial resulted in a verdict for the company, and from a judgment entered in conformity with said verdict the administratrix appeals.

McMurtry had been engaged as lineman by different telephone companies for about eight years before his death and was, therefore, an experienced lineman. He had charge of a small crew of men on the day of the accident erecting a telephone line in Elizabethtown. To complete the line it was necessary to cross at right angles over the lines of the utilities company, and McMurtry and his crew were attempting to erect a guard wire over the power company's wires as a support and protection to keep the telephone wires from sagging on to the power wires of appellee company. In doing this McMurtry had climbed one of the light poles and attached the wire to

the top thereof.   He then tied a rope to the other end of the wire and proceeded to climb another electric light pole for the purpose of attaching the wire to the top of that pole.   Near the top of the pole was a crossarm on which three or more high voltage wires were located, and below this on the pole was another crossarm, but it carried no wires, and about four or five feet down from the top of the pole were two brackets nailed on either side of the post to which were attached two telephone wires.   At the time of the accident McMurtry had climed the pole, using his spurs until he stood between the power wires of appellee company, his head and shoulders above and his feet below the high voltage wires.   He had in his hand the rope to which the wire on the ground was attached. Standing on his spurs he put his safety belt around the post and his body so as to prevent his falling.   He then attempted to reach out over the power wires and bring the rope over the top thereof, but in doing so he came in contact with an uninsulated wire, which caused him to be thrown against another live wire on the post, when the current killed him almost instantly.   The high power wires on this post had been in use for a long time and some of the insulation had fallen off, leaving the wire bare in places.   Strings of the insulating composition were hanging down from the wires, indicating that they were in part bare, or at least some of the insulation had fallen away from the wire.

There was an arrangement or practice by the utilities company and the telephone company for which McMurtry worked whereby each of said companies, without specific consent of the other, would erect and maintain upon the other's poles in the city of Elizabethtown, wires to be used in the erector's business, the only reservation being that in case the wires erected by one of the concerns upon the poles of the other were an inconvenience or obstruction to its business or plans the erector would remove the wires from the poles of the other company upon that company's request.   Under this arrangement the deceased, McMurtry, was proceeding when he climbed the pole on which he met his death.

It is in evidence that properly insulated wires of the character and voltage of the ones under consideration are not dangerous to persons working near them, and that had these wires been properly insulated McMurtry would not have lost his life by coming in contact with them, and this is the basis of appellant's claim of action-

able negligence in this proceeding. All the persons present at the unfortunate accident testified concerning what took place immediately before the current struck McMurtry. It appears from this evidence that different modes of procedure in the erection of the telephone line had been suggested, and among the telephone crew it had been stated in the presence and hearing of McMurtry that the insulation was off of the power lines of appellee company, and that the same were dangerous. After considering the matter for some little time and observing the naked condition of the high voltage wires near the pole, McMurtry decided to climb the pole and endeavor to reach around or over the high power lines and erect the supporting line for the telephone company, but before he started to do this one or more of his helpers protested against his climbing the pole and attempting to work among the live wires of the utilities company, and pointed out to him that the wires were dangerous, to which McMurtry responded: "I have worked around them long enough to know my business," and proceeded to climb the pole and to work over the high voltage wires in the manner above stated, when he touched the wires and came to his death. It further appears that all the persons on the ground, looking up at the wires, had discovered the uninsulated condition thereof before McMurtry attempted to connect the telephone support wire to the top of the pole above the power wires.

Under the practice existing between the utilities company and the telephone company by which each erected lines upon the other's poles at will, it must be held that the agents and servants of the telephone company, including McMurtry, had a right to go upon the poles of the utilities company, and that McMurtry at the time of his death was at a place he had a right to be, and at which it was the duty of the utilities company, its agents and servants, in the exercise of reasonable care, to have anticipated that he would be. It was, therefore, the duty of the utilities company at that time to exercise the highest degree of care known and used by persons engaged in the same character of business to have and maintain its high voltage wires in safe condition, and to keep said wires perfectly insulated at or near its poles where, in the exercise of ordinary care, the presence of the telephone employes in the discharge of their duties was reasonably to be anticipated. Common prudence dictates that in the manufacture, sale and distribution of electricity the high-

est degree of care must be exercised for the protection of others from this subtle and dangerous agency. McLaughlin v. Electric Light Co., 100 Ky. 173; Thomas v. Maysville Gas Co., 108 Ky. 224; Owensboro City Railway Co. v. Haden, 155 Ky. 283; Bowling Green Electric Light Co. v. Dean's Administrator, 134 S. W. 1115; Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 728; Anglea's Admr. v. East Tennessee Co., 134 S. W. 1119.

The administratrix of McMurtry was entitled to have a recovery for the death of her intestate unless the negligence of McMurtry, at the time and place of his injury and death, so contributed thereto that but for his negligence he would not have been electrocuted; differently stated, if the deceased McMurtry, before he went on the electric light pole, saw and knew that the high voltage wires of the utilities company were uninsulated and naked, and that if he came in contact with one of those live wires he would be injured, if not killed, and that with such knowledge and realization of danger he undertook to reach over or around the uninsulated high voltage wires of the utilities company, and in doing so unintentionally came in contact with a naked, live wire and was electrocuted, his death must be held to be the result of his own negligence, or of the risk he assumed in going into and among live, uninsulated wires.

It is insisted by appellant that the trial court erred in several respects in its instructions to the jury. In substance the court said to the jury: If you believe from the evidence that the plaintiff's decedent, Arthur McMurtry, was, at the time and on the occasion mentioned in the evidence, at a place on the light pole of the utilities company where the said company's agents in charge of its business might reasonably have anticipated McMurtry to be, in the performance of his duties as lineman for the telephone company, under the practice or arrangement existing between the telephone company and the utilities company, then it was the duty of the utilities company at said place to use the highest degree of care and skill known, which may be used under the same or similar circumstances to so insulate and protect its wires as to make them free from danger to those who might be brought into contact with them, and if the jury shall further believe from the evidence that the said company failed to so insulate or protect the wire or wires with which plaintiff's decedent came in contact, and that his injuries were caused as the direct result of such fail-

ure, then the law is for the plaintiff and the jury should so find. In criticism of this instruction it is urged that the court confined the plaintiff's right of recovery to too narrow grounds in telling the jury that it could find for the plaintiff only in case decedent was killed at a place where the utilities company should reasonably have expected him to go *in the discharge of his duties without notice to it,* and insist that the italicized words should have been omitted from the instruction, that part *in the discharge of his duties* being irrelevant and too restrictive, while *without notice to it* allowed a recovery only in case the utilities company was notified of the intention of the decedent to be at or upon the light pole on which he was killed. We think there is no error in the instruction, or at least nothing more than a wholly unimportant one. Had McMurtry been a trespasser at the time of his injury and death his administratrix would not have been entitled to recover. Roger's Admr. v. Union Light, Heat and Power Co., 123 S. W. 293; Mayfield Water Co. v. Webb's Admr., 129 Ky. 395; 9 R. C. L., page 1207. Her right to maintain the action is based upon the right of her husband in the discharge of his duties to be upon the electric light pole. Had he not been in the discharge of his duties no recovery could be had by his estate for his death. Nor do we think the expression *without notice to it,* used in the instruction, means or was intended to mean, or could it have been understood by the jury to mean, that the appellee company was entitled to notice of McMurtry's intention to be at or upon the light pole about the time of his injury and death. It had a much broader meaning than that and the jury no doubt so understood it. By that expression it was intended by the court to inform the jury that McMurtry, in the discharge of his duty, had a right to go at any time on the electric light pole without notice to or right from the utilities company. Certainly no notice was required to be given the utilities company under its arrangement and practice with the telephone company, and this part of the instruction so informed the jury.

The first instruction is further criticised by appellant in that part which relates to contributory negligence and reads as follows:

"Unless they further believe from the evidence that in receiving his injuries which produced his death, the decedent was himself negligent, and that his negligence contributed to his injury and death to such an extent that

but for it he would not have been injured, in which event the jury should find for the defendant."

It is said that this instruction should have contained after the word "negligence" the expression "if any there was on his part," so that when those words are supplied it would read: Unless the jury further believe from the evidence that in receiving his injuries which produced his death, the decedent was himself negligent, and that his negligence, *if any there was on his part,* contributed to his injury and death, etc. To have added in these words would have made the instruction conform more nearly to the instruction usually given by courts under facts like these. But the error was not prejudicial.

The court defined the word "negligence," as used in its instructions, to mean the failure to exercise ordinary care, and further told the jury that ordinary care means that degree of care ordinarily exercised by reasonably prudent persons under like or similar circumstances to those proven in the case. Appellant complains that this instruction should not have been given because it could have related only to the negligence, if any, of decedent McMurtry. And it is insisted that a definition of negligence as applied to the appellee company should have been given by the trial court. While there is no specific definition of negligence as applied to the utilities company, the court told the jury the degree of care which the company was required to exercise in the conduct of its business for the protection of others, and especially for the protection of McMurtry as a lineman of the telephone company in going upon the utilities company's poles. This was all that was necessary on this subject for the guidance of the jury.

The trial court very prudently submitted the case to the jury over the protest of appellee company. The company insisted that the decedent, McMurtry, was guilty of such contributory negligence as would, as a matter of law, preclude a recovery by his administratrix, and for this insistence there is much good reason. There is no evidence contradicting that given by the witnesses, both for the plaintiff and defendant, in effect that McMurtry saw and knew of the naked and uninsulated condition of the high voltage wires on the pole of the appellee company on which he came to his death, and with this knowledge, and over the protest and importunities of the members of his crew, and in disregard of the open and obvious danger from the live wires, went into them and undertook

to perform his work under the most hazardous conditions with the full realization of the danger, and when he knew of and had just discussed with the other members of the crew two other safe methods of doing the work: (a) Pulling the plugs and cutting off the current, (b) calling the power house and informing them of his intention to be on the pole and requesting the power to be cut off. With these facts admitted, can it be said that decedent, McMurtry, was not guilty of such contributory negligence as but for which his death would not have resulted? Ordinarily contributory negligence is a question for the jury. But where there is no controversy about the facts and but one conclusion can fairly be drawn from the evidence, it is the duty of the court to determine whether or not, as a matter of law, the plaintiff was guilty of such negligence, it should so state to the jury in its instructions, but if, on the contrary, it finds that the plaintiff was guilty of contributory negligence, which helped to bring about his injuries and but for which negligence on his part he would not have been injured or killed, it is the duty of the court to direct the jury to find and return a verdict for the defendant. L. & N. R. R. Co. v. Eakin's Admr., 103 Ky. 465; Dallas v. I. C. R. R. Co., 144 Ky. 737; Dailey v. So. Cov. & Cin. Ry. Co., 158 Ky 64; Hayden v. Chicago, Memphis & Gulf R. Co., 160 Ky. 836, 170 S. W. 200. As the trial court submitted the case to the jury under instructions as favorable to appellant as the law and the facts warranted, and the jury found and returned a verdict for the utilities company, which verdict is fully sustained by the evidence, it is wholly unnecessary to consider and determine whether the conduct of McMurtry, in going into a place of danger, was such contributory negligence as would, as a matter of law, preclude a recovery for his death.

Judgment affirmed.