## Moran's Administratrix v. Kentucky Power Company.

(Decided March 8, 1929.)

SWINFORD & SWINFORD and M. HARGETT, for appellant.

M. J. HENNESSEY for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The plaintiff has appealed from a directed verdict against her. The Bracken County Telephone Company and the Kentucky Power Company, on February 17, 1927, made an agreement by which certain litigation pending between them was settled, and in which they agreed, among other things, that on the Gertrude pike such changes in the location of their poles and wires should be made that, after they were made, all of the poles and wires of the telephone company would be on the south side of the pike and all the poles and wires of the power company would be on the north side. Among other things, they agreed: "Section 18. In the location, construction, maintenance and repair of the telephone company's system, conditions may arise whereby injury to the employees of the telephone company or other persons or property might occur by reason of the erection of the telephone company's system with the electric energy on the lines of the electric company, and it is therefore mutually agreed hereto, that in case there is a necessity in the operation of its business of erecting part of its telephone system of cables, wires, poles, etc., whereby the current should be cut off the line of the electric company while such work is in progress. It is therefore agreed that the electric company will disconnect its supply of electricity without cost to the telephone company, in the section where said work is in progress, at the request of the telephone company. Said request however of the telephone company shall be made by its manager or superintendent or other duly authorized representative of the electric company, and the time of disconnecting said electric energy shall be such as can be conveniently arranged by the electric company."

On Thursday, May 12, 1927, in a conversation with the superintendent of the power company, about another matter, the superintendent of the telephone company casually told him he would start work on the Gertrude

pike line on Monday, May 16; but he admits he did not then request that the power company should shut off its current. On account of rain they did no work on Monday. On Tuesday, the telephone company hauled some poles and dug some holes. On Wednesday, they hauled some more poles and staked off some holes. Thursday they skinned or shaved poles and dug holes. Friday they began setting poles. In setting the fifth pole, it came in contact with a wire of the power company that was carrying 13,800 volts of electricity, and John Moran, one of the employes of the telephone company, who was holding this pole, was electrocuted. This suit was brought by his administratrix against the Kentucky Power Company, Barrett Waters, its president, and Joe Matthews, its superintendent, to recover for the death of Moran. The negligence alleged is:

"She says that the defendant, Kentucky Power Company, its officers and agents, knew, or by the exercise of ordinary care could have known, that her intestate and other employees of said telephone company were engaged in the aforesaid work of removing and replacing said telephone line, as aforesaid, and that their duties required them to be near defendant's wires and in dangerous proximity to said wires; and that defendant negligently and carelessly failed and refused to cut off said electric current while said work was being done by intestate, John Moran, and the other employees of said telephone company, or to elevate said wires at such distance above the ground as would make it safe for the said John Moran and others to perform said work."

"That the said Telephone Company did notify the said Power Company, its officers, agents and employees, by giving notice to Joe Matthews, manager, at Augusta, Ky., just before the commencement of the work of the time and place that the work was to be done. . . . But the said defendant Power Company negligently and carelessly failed and refused to take any steps to prevent injury to the employees of the said Telephone Company working in and about the said Power Company's lines and it was through this carelessness and negligence that the accident herein complained of occurred."

The first paragraph of the answer was a traverse of the petition; the second was a plea of contributory negligence; and the third was that the telephone company was working under the Workmen's Compensation Act ·(Ky. Stats., secs. 4880-4987) ; and that the widow and children of Moran had been allowed compensation of $7.80 per week for 335 weeks. By agreement, the plea of contributory negligence was controverted of record. ,

The proof showed that this accident occurred at a point where the poles of the power company were 344 feet apart, the particular place being 140 feet from the pole west of it, and 204 feet from the pole east of it; that this was in the country that these wires were not insulated; that one of them had been broken; and that in splicing it, the slack had not been well taken up, as a result of which this spliced wire sagged about 3 feet below the other one, so that it was only 21½ feet above the roadway, or 19¼ feet above the bank on the roadside wherein the hole was dug, where Moran and his companion were endeavoring to erect a pole at the time he was killed. The proof to sustain the plea of contributory negligence is that Moran knew of the condition and potential danger of these wires; that with such knowledge, he and one other man undertook to erect a green, skinned, and sappy locust pole, weighing 228 pounds, 20¼ feet long, and while holding it, took hold of a wire fence with his hands, so that when the pole was raised and came in contact with this sagging wire, he received the shock that caused his death. At the conclusion of all the evidence, and at the direction of the court, the jury returned a verdict for the defendant, and the correctness of this action of the court is the only question the administratrix discusses in her brief. She insists she made a case for the jury by showing:

These poles were 344 feet apart; this wire was not insulated; this wire was sagging; the defendant had been notified this work was going to be done, and had not cut off the current; had not gone over its lines to see they were in proper shape for this work to be done, and had sent no one to watch or guard these lines while the work was being done.

Our attention has not been called to any statutory regulation or, for that matter, to any established use or

practice which would require these poles to be placed any closer than these were, which would require the insulation of these lines, situated in the country as they were, or which would establish that the sagging of this line so that it was 19¼ feet above the bank where these men attempted to erect this pole would be negligence. The notice given the defendant was not such a notice as was contemplated by the contract between these two companies. It merely indicated in a general way that the telephone company was going to work on this line. A great deal of that work would consist in preparing the poles, locating the holes for them, and digging the holes, and clearly the defendant was not required to cut off its current and inconvenience the people whom it served, while that work was going on. There was no danger to the men while doing such work, and we are persuaded that there would have been no danger to them if they had had a sufficient crew when they were erecting the pole in question. They had set four poles that morning without any one getting hurt, but they had three men at that time, and this accident resulted from the efforts of two men to erect this pole. It seems that this case cannot be distinguished from the case of McMurtry's Adm'r v. Kentucky Utilities Co., 194 Ky. 294, 239 S. W. 62. Of course, that case is not exactly like this one, and it is hard to find two cases exactly alike; but we do find in other jurisdictions cases that can hardly be distinguished from this. In Chartier v. Barre Wool Combing Co., 229 Mass. 153, 118 N. E. 263, a painter, in undertaking to paint an iron stack, rested his ladder on the roof of a power company's sub-station where there were exposed power wires, from contact with which he was injured, and it was held that he was negligent.

In the case of Proctor v. San Antonio St. Ry. Co., 62 S. W. 939, the decedent was killed while removing some cinders. These cinders were wet. The decedent was using a hoe with an iron handle to dig down the cinders. About the second blow, this hoe was caught on a trolley wire and decedent received an electrical shock which killed him almost instantly. It was held that he was guilty of contributory negligence. In the case of Rodgers' Adm'r v. Union Light, Heat & Power Co., 123 S. W. 293, we sustained a peremptory instruction under circumstances that were very similar to this. Also see Mayfield Water & Light Co. v. Webb's Adm'r, 129 Ky.

395, 111 S. W. 712, 18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469.

The duty of the defendant to insulate its wires does not extend to the entire system or to parts of the line where no one could reasonably be expected to come in contact with them. 20 C. J. 356. We cannot say that the court erred in directing a verdict for the defendant, under the circumstances.

The judgment is affirmed.