## Watral's Adm'r v. Appalachian Power Co. et al.

(Decided March 25, 1938.)

26

ROSCOE VANOVER, E. J. PICKLESIMER and STRATTON & STEPHENSON for appellant.

J. J. MOORE for appellee Majestic Collieries Co.

ANDREW E. AUXIER and GOODYKOONTZ & SLAVEN for Appalachian Power Co., and Kentucky & West Virginia Power Co.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Frank Watral, administrator of the estate of Kornelia Watral, deceased, brought an action against the Appalachian Power Company and the Majestic Collieries Company to recover damages for the death of his intestate alleged to have been caused by the negligence of the defendants. It was alleged in the petition that the Appalachian Power Company furnished to its codefendant electricity over its power lines, consisting of high-tension wires suspended on poles; that the Majestic Collieries Company desired to have the power line extended up Poplar creek, and it erected poles and placed thereon a wire; that the poles were placed along or near the public road and near the home of Kornelia Watral, and through a thickly populated section of the mining camps owned by it. The material part of the petition reads:

"That the defendant Majestic Collieries Company in making the said extension placed the poles near the home of the deceased Kornelia Watral, and placed the wire only about 13 feet above the surface of the ground and negligently and carelessly failed to insulate the said wire or to in any way protect the wires, or to prevent other wires or any object coming in contact with the said high tension wire; and that the said wire was so close to the building and so near the surface that it was dangerous and unsafe to persons living in the mining town, where it was erected; and that the defendant, Appalachian Power Company furnished current of electricity and permitted the same to be carried over the said wire, knowing its dangerous and un-

safe condition and its close proximity to the houses, public road, and places frequently occupied and used by the public; and both the defendants Majestic Collieries Company and Appalachian Power Company used, caused and permitted 2,200 volts of electricity to continuously pass over the said high tension wire; and that the same was unsafe and dangerous and well known to the defendant, to be in an unsafe and dangerous condition and wholly uninsulated or protected.

"That on or about the 9th day of April, 1935, a small boy was flying a kite, with a small copper wire which came in contact with the high tension wire owned by the Appalachian Power Company, but erected and maintained by the Majestic Collieries Company; and that the said small copper wire became charged with a high voltage of electricity and the small boy, by the name of ———— Robinette, came in contact with the said wire and was badly burned, and shocked with electricity and his cries brought to his side his mother, Matilda Robinette, who undertook to assist her son and that she fell to the ground, badly shocked and burned by an electric current; and that her cries brought to her side her neighbor, Kornelia Watral, who attempted to assist her and in so doing was electrocuted and died from the effects of high voltage of electricity, produced and furnished by the defendant Appalachian Power Company and over the high tension wire erected and maintained by the Majestic Collieries Company and that the said injuries and death of Kornelia Watral was brought about by the gross carelessness and joint negligence of the Appalachian Power Company and the Majestic Collieries Company."

An amended petition was filed in which the Kentucky & West Virginia Power Company was made a defendant. The amended petition repeated, in substance, the averments of the original petition, and, in addition thereto, contained the following averment:

"That children of tender years who resided in and about the mining camp of the defendant, Majestic Collieries Company, and whose homes were bordering upon and adjacent to the public street over which said uninsulated wire was strung as

hereinbefore set out were in the habit of playing in and upon said street and under and around said wire at various childish games and that they were in the habit of flying kites in and around said street and said wire, and that this play of said children and the flying of kites was known to the agents, servants and employees of each of the said defendants herein, prior to the acts complained of herein on or about the 9th day of April, 1935.''

Demurrers of the Majestic Collieries Company and the Kentucky & West Virginia Power Company to the petition, as amended, were sustained, the plaintiff declined to plead further, and, from the judgment dismissing his petition, as amended, he has appealed. The Appalachian Power Company was named an appellee, but it had never been served with process in the circuit court, and a motion to dismiss the appeal as to it has been sustained.

The appellees advance a number of reasons why the judgment should be affirmed. They argue that under the allegations of the petition the unnamed son of Matilda Robinette is presumed to be barely under 21 years of age; that Kornelia Watral, Matilda Robinette, and her son were trespassers or, at most, bare licensees upon the lands of the defendant collieries company, and through young Robinette likewise trespassers with respect to the electric wires involved, and that therefore they took the premises and said appliances in the condition in which they found them and at their own risk, and the defendants owed them no duty except to refrain from willful and wanton injury, which duty was not violated. They also argue that the allegations of the petition raise a presumption of contributory negligence against plaintiff's decedent, and show that her death was caused by her own act.

It is unnecessary to discuss these questions, in view of our conclusion that the petition, as amended, failed to allege facts showing a duty on the part of the defendants to anticipate and guard against injuries received in the manner alleged in the petition. In view of the deadly character of high-tension wires, a very high degree of care in favor of the general public is required of electric companies in the placing and maintenance of such wires. The attractive nuisance doctrine has no application here, since the electric wire had no relation

to the flying of the kite by the Robinette boy. He was probably wholly oblivious of its presence. The question presented is: Was it the duty of the defendants to anticipate that a boy would fly a kite attached to a copper wire which might come in contact with the uninsulated electric wire?

The general rule followed by this and practically all other courts is that persons or corporations maintaining and operating wires charged with a high and dangerous voltage of electricity must exercise the highest degree of care for the protection of members of the public in all places where such persons have a right to be. Macon v. Paducah Street Railway Company, 110 Ky. 680, 62 S. W. 496; Lexington Utilities Company v. Parker's Adm'r, 166 Ky. 81, 178 S. W. 1173; Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179; Kentucky & West Virginia Power Co. v. Riley's Adm'r, 233 Ky. 224, 25 S. W. (2d) 366. While those engaged in the business of producing and transmitting electric current must use the utmost care and skill to prevent injury to any person who is in a place where he has a right to be, yet they are not insurers against all injuries which may be caused by the operation of their business. Kentucky Utilities Company v. Woodrum's Adm'r, 224 Ky. 33, 5 S. W. (2d) 283, 57 A. L. R. 1054. Perfect insulation of wires charged with a high voltage of electricity at places where persons have the right to go for business or pleasure is an element of the degree of care required, but one engaged in the business of transmitting electric current is not required to insulate wires at points where no one could reasonably be expected to come into contact with them. Moran's Adm'x v. Kentucky Power Company, 228 Ky. 329, 14 S. W. (2d) 1087. The rule is thus stated in 9 R. C. L. 1213:

"It is only reasonable that the duty of providing insulation should be limited to those points or places where there is reason to apprehend that persons may come in contact with the wires, and the law does not compel electric companies to insulate their wires everywhere, but only at places where people may go for work, business, or pleasure, that is, where they may reasonably be expected to go."

Appellant cites and relies upon McLaughlin v. Louisville Electric Light Company, 100 Ky. 173, 37 S.

W. 851, 34 L. R. A. 812, and City of Madisonville v. Nisbet's Adm'r, 270 Ky. 248, 109 S. W. (2d) 593, 595, but each of these cases presents a state of facts wholly dissimilar to the facts alleged in the petition in the instant case. In the McLaughlin Case, the light company maintained an uninsulated wire near the side of a house. McLaughlin, a painter, came in contact with the wire while painting the house and was severely burned. The company was held liable because the person injured was at a place where he had a right to be when he received the injury, and the company had failed to insulate the wire at a point where persons were apt to come in contact with it. In City of Madisonville v. Nisbet's Adm'r, the city owned and operated an electric distribution system for lighting its streets and selling electricity to its citizens. A pulley chain extended from the span wire from which the street light was suspended to a pole and down the pole to a point a few feet above the sidewalk. Nisbet leaned against the pole, his hand came in contact with the pulley chain, and he was killed. In the course of the opinion it was said:

> "The decedent was not a trespasser, but was on the street, where he had a right to be, and might naturally be expected to lean against and place his hand upon the pole. Clearly, he was one to whom the city owed a duty."

In the instant case, the wire, though only 13 feet above the ground, was beyond the reach of children playing in the road or on the ground beneath the wire. The distance of the wire above the ground bore no relation to the accident. The result, no doubt, would have been the same had the wire been 30, 50, or more feet above the ground. It was alleged in the petition that the appellees knew children played in the road and flew kites in the vicinity of the wire, but it was not alleged that these children flew kites with copper wires attached thereto. It is a matter of common knowledge that children ordinarily use strings, which are nonconductors of electricity, in flying kites, and no facts are alleged which would charge appellees with knowledge that a copper wire might be used. The act that caused the accident was an independent one of the Robinette boy, which could not reasonably have been anticipated by the appellants. Myer v. Union Light, Heat & Power Co., 151 Ky. 332, 151 S. W. 941, 43 L. R. A., N. S., 136; Stanley v. Town of Smithfield, 211 N. C. 386, 190 S. E. 207.

In Callaway v. Central Georgia Power Company, 43 Ga. App. 820, 160 S. E. 703, 704, the court said:

> "Although an electric company may be chargeable with knowledge that children play along the streets of a city, it cannot reasonably be anticipated that children, while at play in the streets of the city, will, by throwing a loose wire, make contact with the company's uninsulated wires strung over a street at a height of 20 feet only. It follows that the erection and maintenance by an electric company of highly charged uninsulated wires over the streets of a city erected at a height of 20 feet, in the absence of any legal duty placed upon the company to insulate its wires or to maintain them at a higher distance from the ground, is not negligence as respects a child playing in the street, who in play, accidentally throws a small wire attached to a spool over one of the company's wires and thereby receives an electric shock which injures him."

In Stark v. Muskegon Traction & Lighting Co., 141 Mich. 575, 104 N. W. 1100, 1101, 1 L. R. A., N. S., 822, the electric light wires were suspended 19 feet above the ground, whereas the city ordinance required them to be suspended 25 feet above the ground. A boy ten years of age was playing with other children on the ground beneath the wires when a broken telephone wire was thrown over the light wires by one of the children. The ten year old boy touched the telephone wire and was injured. The court said:

> "It is, however, decisive of the case that plaintiff has conclusively shown a condition and relation of things which, as to himself and the public generally, was safe and harmless if not interfered with, has shown neither invitation nor inducement warranting or excusing interference, and has just as conclusively proven an interference, participated in by himself, the character and results of which were not to be reasonably apprehended or guarded against. Whether or not, under the circumstances of this case, we apply the term 'trespasser' to one of plaintiff's years, (Trudell v. Railway Company, 126 Mich. 73, 85 N. W. 250, 53 L. R. A. 271; Henderson v. Detroit Citizens' Street Railway Company, 116 Mich. 368, 74 N. W. 525), he was certain-

ly a wrongdoer, who but for his acts of wrongdoing would not have been injured. Indulging the presumption that plaintiff was not aware of the danger of seizing the telephone wire does not operate, of itself, to charge defendant with responsibility for what occurred. Neither the distance of defendant's wires from the ground, nor the fact, if it is a fact, that one of them was defective as to insulation, can be said to be the proximate cause of the injury.''

One is bound to anticipate only the reasonable and natural consequences of his conduct, and is not required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. We find no allegations of fact in the petition, as amended, authorizing the conclusion that appellees should, in the exercise of even a high degree of care, have anticipated that any child would fly a kite with a copper wire and receive injuries resulting from the copper wire striking the power line.

The petition, as amended, having failed to state a cause of action, the circuit court correctly sustained appellees' demurrers thereto.

The judgment is affirmed.