# Frederick's Adm'r v. Kentucky Utilities Co.

Dec. 16, 1938.

WITHERS & LISMAN for appellant.

GORDON, LAURENT, OGDEN & GALPHIN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant and plaintiff below, as administrator of his decedent, filed this ordinary action in the Webster circuit court against appellee and defendant below, Kentucky Utilities Company, seeking to recover judgment against it for $40,600 alleged damages to the estate of plaintiff's decedent, resulting from his death and which plaintiff in his petition averred was produced by the

negligence of defendant. The court sustained a demurrer to each of the two paragraphs of the petition, and plaintiff declined to plead further, whereupon his petition was dismissed, and from that judgment he prosecutes this appeal.

The substance of the material facts averred in the petition are: That defendant constructed, owns and operates an electric transmission line traversing portions of Webster county and crossing the farm of one of its citizens, Lem Clayton, from whom defendant obtained an easement for that purpose in 1928; that the line consists of several large wires supported by metal towers about 750 feet apart and about 35 feet high and built of steel uprights placed in a square about 20 feet apart at the base, and coming near a point at the top. At and for a distance of four or five feet below the top—are metal cross bars which support the transmission wires and the lowest wire at the tower is 30 feet from the ground; but, according to the averments of the petition, it sags at the lowest point between the towers to within about 20 feet from the ground. All of the wires carry a high voltage of electricity which is carried from the place of manufacture to the place of consumption, where the higher transmitted current or voltage is reduced in quantity and distributed to consumers.

On November 20, 1936, decedent, Clifton Frederick, and one Ernest Mitchell were gathering corn for Mr. Clayton in the field crossed by defendant's transmission line. They found somewhere in the field some loose wire and Mitchell procured a piece of it and threw it over the lower transmission wire—saying at the time and in the presence of decedent that he did so for the purpose of seeing "what would happen." He released the wire that he threw from his hand and neither end of it came to the ground, thereby forming no ground connection and nothing happened. Decedent, who was 17 years of age, then stated that he would perform a like experiment and see if he could make something happen. However, in throwing his wire across the lower wire of the transmission line he did not release the end of the wire he was holding, but continued to grip it, thereby producing a grounding of the wire through his body and causing a large voltage of electricity to pass through it, later resulting in his death.

The petition states the facts as so briefly related

by us, but with greater elaboration, embodying charges of negligence on the part of the defendant in not having its wires sufficiently insulated to protect against such a catastrophe as happened to plaintiff's decedent, even against the intervening cause that produced it; that no informative warning signs, or a sufficiency thereof, of the danger of coming in contact with the wires were provided or furnished; that the wire was permitted to remain too near to the ground, and that it should have been constructed and maintained at a greater height. Other facts which might or might not constitute negligence toward one coming in contact with the uninsulated wires in circumstances creating a duty of defendant to anticipate and guard against were also averred. The learned trial judge concluded that defendant was under no duty to anticipate or guard against injuries that might happen in the circumstances described, and that, since negligence consists in the failure to perform a duty to the one injured thereby, the petition failed to charge a cause of action for the recovery of damages sustained by the estate of decedent.

In brief of counsel for appellant much research is shown and many cases are cited sustaining the well recognized principle that handlers of and dealers in electricity are required to exercise the highest degree of care to protect persons coming in contact therewith against injuries, since the substance in which they deal is of a highly dangerous nature and is both hidden and secreted so as not to be observable or otherwise detectable by the five senses. However, counsel cite no case holding that those engaged in the making or distribution of electricity to be guarantors against accidents sustained by one who voluntarily brought himself in contact with the current by his own intended act entirely disconnected from the performance of a duty in which he was engaged and which he had the right to perform. If young Frederick, in this case, as a workhand on the farm of his employer and in the performance of duties coming within the scope of his employment, had come in contact with defendant's wire through the projection of machinery or otherwise, then a different question would be presented, but no such case is made out and we are simply called upon to require defendant to make compensation for the death of decedent, which was produced by his own voluntary act, wholly and entirely disconnected with any duties that he was performing or

was called on to perform in serving his employer. The principles established by the cases relied on by plaintiff's counsel are each and all recognized and applied by this court in numerous opinions; but we, as well as other courts, also recognize that there is a limit to the liability of those handling the dangerous substance here involved and that they are not guarantors against the consequences of injuries sustained under any and all circumstances that may happen.

The case of Mayfield Water & Light Company v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 33 Ky. Law Rep. 909, 18 L. R. A., N. S., 179, 130 Am. St. Rep. 469, contained facts having a much greater approach toward liability than do the facts of the instant one. The decedent therein was a boy (Charles M. Webb) 11 years of age. The guilty wire was constructed and maintained by the defendant, Water and Light Company, along College Street just over or by the side of its north sidewalk. The street ran in front of an extensively attended school. It was only 18 feet from the ground, and at a distance of only 8 inches from it was a guy wire running from thence to the ground at an angle of about 45 degrees. Young Webb climbed the guy wire and came in contact with the charged transmission wire, whereby he was electrocuted, to recover damages for which the action was brought in the Graves circuit court. Judgment for plaintiff was obtained therein, but upon appeal to this court it was reversed upon the ground that defendant's motion for a directed verdict in its favor should have been given. The opinion also held that the conditions therein appearing were not embraced by the "Attractive Nuisance" doctrine so as to excuse trespasses committed by children of indiscreet and nonappreciative age, and which is also a ground of recovery contained in the instant petition in a second paragraph.

After citing and discussing numerous cases in that opinion we expressed our final conclusion in this language [page 713]: "As long as electric light wires are not put under ground, they must be put upon poles, and, where they are placed above the street as high as 18 feet, the company should not be required to anticipate that children will climb up to the wires and get hurt. Guy wires are necessary on high poles at street corners where the line turns. A guy wire placed on a high pole to keep it in place, or some such contrivance, cannot well be dispensed with. Such a wire is not a dangerous in-

strumentality, attractive or alluring to children within the meaning of the Turntable Cases [17 Wall. 657, 21 L. Ed. 745]. The little boy was a trespasser upon the defendant's wire, and, being a trespasser, he cannot complain that the premises were unsafe. Children, no less than adults, when they trespass upon the property of another, take the risk unless the circumstances bring the case within the principle of what is known as the Turntable Cases, where a dangerous instrumentality is maintained, with knowledge, actual or constructive, that it is alluring to children and endangers them. A wire 18 feet above the ground, which can only be reached as this wire was, cannot be said to fall within the exception to the general rule."

In the very recent case of Watral's Adm'r v. Appalachian Power Company, 273 Ky. 25, 115 S. W. (2d) 372, the person contacting the fatal current, was "a small boy" flying a kite with a wire string. It came in contact with an uninsulated electric wire belonging to defendant, elevated only 13 feet from the ground. Plaintiff's decedent in that case was an attempted rescuer of the youthful kite flyer, in which he sustained the injuries resulting in his death. The facts, with great elaboration, were set out in the petition and its amendments, but the trial court sustained a demurrer thereto and on appeal by plaintiff we affirmed the judgment. Both foreign and domestic cases were cited by respective counsel in that case in briefs filed with this court, which are referred to and discussed in our rendered opinion in which we compared the facts in them with those appearing in that case. We deem it unnecessary to set out such parts of the opinion, since the information may be obtained by reading it. The noninsulation of the guilty wire in that case was one of the chief reliances of plaintiff therein to sustain his right of action; but, in denying its sufficiency in the circumstances adduced, we said [page 374]: "Perfect insulation of wires charged with a high voltage of electricity at places where persons have the right to go for business or pleasure is an element of the degree of care required, but one engaged in the business of transmitting electric current is not required to insulate wires at points where no one could reasonably be expected to come into contact with them. Moran's Adm'x v. Kentucky Power Company, 228 Ky. 329, 14 S. W. (2d) 1087." Further along the opinion says: "The act that caused the acci-

dent was an independent one of the Robinette boy, which could not reasonably have been anticipated by the appellants. Myer v. Union Light, Heat & Power Company, 151 Ky. 332, 151 S. W. 941, 43 L. R. A., N. S., 136; Stanley v. Town of Smithfield, 211 N. C. 386, 190 S. E. 207.''

Finally we summarized our conclusion by saying: ''One is bound to anticipate only the reasonable and natural consequences of his conduct, and is not required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen. We find no allegations of fact in the petition, as amended, authorizing the conclusion that appellees should, in the exercise of even a high degree of care, have anticipated that any child would fly a kite with a copper wire and receive injuries resulting from the copper wire striking the power line.''

If, therefore, the defendant in the Webb Case was not required to anticipate that an infant 11 years of age would climb its guy wire so as to reach the danger zone and contact its uninsulated transmission wire, and if the defendant in the Watral Case was not required to anticipate that a ''small boy'' would bring his metal kite line in contact with one of its uninsulated transmission lines, and to guard against such contingencies—when the fatal wires in the one case were only 18 feet from the ground, and in the other only 13 feet high—then surely it cannot be contended in this case that defendant as maintainer of a similar wire 20 feet from the ground should anticipate that a 17 year old boy—though having the mind of a child only 12 years of age, as is alleged—would voluntarily bring himself in contact with the fatal wire by the means described whereby he sustained his fatal injuries. The correctness of that conclusion is abundantly pointed out in the Webb and Watral opinions, and in which both foreign and domestic cases are cited. We, therefore, could not arrive at any other conclusion, unless we saw proper to overrule those cases, which we are not prepared to do, although possessing great sympathy for the unfortunate youth.

The Webb Case, as we have seen, also denied the right of plaintiff to recover under the ''Attractive Nuisance'' doctrine. There was much more room for applying it in that case than there is in this one. There the danger was located at the edge of a sidewalk constantly used by many people, including students of the school

situated on grounds bordered by the street. The guy wire running from the top of the pole to the ground furnished easy access to the danger, and which would most likely be employed by a vigorous youth of young Webb's age. The facts in the instant case are totally devoid of any such attractive features. The structure complained of in this case (transmission line) consisted of nothing but towers (or metal posts) with wires extended between them and 20 feet above the ground at the lowest point, with no enticing structure or contrivance by which a youthful trespasser could bring himself in connection with the danger—all of which, we repeat, renders this case farther removed from the "Attractive Nuisance" doctrine than was true in the Webb Case.

In the case of Thompson v. Cumberland Telephone & Telegraph Company, 138 Ky. 109, 127 S. W. 531, the infant plaintiff was only four years of age. He climbed one of defendant's poles to a point where he could reach a dangling wire, and became entangled in it, whereby he lost one of his fingers. Aside from other grounds of negligence alleged it was charged that the conditions created an attractive nuisance, but we held otherwise in reliance on the Webb and other cases, and in doing so we said [page 533]: "There is always danger attending every act of a child when he attempts to climb anything. The limbs of a tree break, and he may fall, yet it will not be contended that the owner must see that the lower limbs of the tree are sufficiently strong to maintain the weight of any child who may take a notion to climb the tree. Then, too, a child may slide down a tree and come in contact with a jagged edge of a broken limb. It cannot be contended that the owner is responsible because he failed to see to it that the place where the limb broke was made perfectly smooth. The danger to the child was not inherent in the guy wire, but the child was injured because of the fact that he climbed the pole and his foot slipped. In our opinion, it was an unfortunate accident, and one which appellee could not have reasonably anticipated."

The condition of the law as so approved and followed clearly demonstrates the correctness of the judgment appealed from, and it is affirmed.