RICHARD B. PUGH, ADMINISTRATOR OF THE ESTATE OF RICHARD B. PUGH, JR., DECEASED, v. TIDEWATER POWER COMPANY, AND CAROLINA POWER & LIGHT COMPANY.

(Filed 6 May, 1953.)

1. **Electricity § 7—**

   Plaintiff's evidence tended to show that his intestate, a boy twelve years old, was flying a kite with a line composed in large part of metal wire, and that the metal wire came in contact with defendants' high voltage wire maintained not less than 25 feet above the ground. Remnants of another kite had been hanging from the transmission wire nearby for a couple of months preceding the tragedy. *Held:* Even conceding that the power company had constructive notice that children were in the habit of flying kites in the neighborhood, the power company was not under duty to foresee that conductive material would be used as a kite string, and therefore the injury was not within reasonable anticipation, and motion to nonsuit was properly sustained.

2. **Evidence § 5—**

   It is a matter of common knowledge that kite strings are ordinarily made of material which is a nonconductor of electricity.

APPEAL by plaintiff from *Carr, J.,* at December Term, 1952, of NEW HANOVER.

Civil action to recover damages for the death of a boy who suffered electrocution when a metal wire, which he was using to fly a kite, came in contact with a bare overhead wire carrying a powerful current of electricity.

The plaintiff's evidence made out this case:

1. The plaintiff's intestate Richard B. Pugh, Jr., a bright boy of the age of twelve years, was a member of the household of his parents, who resided in a thickly populated section of New Hanover County.

2. The Tidewater Power Company, which was engaged in furnishing electricity to the public, distributed electricity through this section by a transmission line, which passed over a vacant field 50 feet from the intestate's home. Currents of electricity suitably reduced by step-down transformers were taken off the transmission line at various points, and conveyed by black insulated wires to the homes of customers. The intestate's home was thus supplied with electricity.

3. The transmission line consisted of five bare and black wires which were attached to cross-arms and suspended on wooden poles at a height of not less than 25 feet above the ground. Each of these wires carried a powerful current of electricity.

4. The Tidewater Power Company did not post any warnings of the dangerous character of the high voltage electric currents carried on these bare wires.

5. Observable remnants of a kite were hanging on three of these bare wires about 75 feet from the intestate's home for "a couple of months" next preceding the tragedy. Despite this, the Tidewater Power Company did not warn the children of the neighborhood against flying kites near the transmission line. But the intestate's father did tell "him not to fly a kite around a wire."

6. The intestate undertook to fly a kite in the vacant field near the transmission line on the afternoon of 10 February, 1952, while the ground was wet. In so doing, he used a kite line composed in large part of a metal wire. The metal wire came in contact with one of the high voltage wires, and the intestate was instantly electrocuted.

7. Subsequent to the tragedy, the Tidewater Power Company "was . . . merged with . . . the Carolina Power & Light Company."

When the plaintiff had introduced his evidence and rested his case, the defendants moved to dismiss the action upon a compulsory nonsuit. Judge Carr allowed the motion, and entered judgment accordingly. The plaintiff excepted and appealed.

*Robert E. Calder for plaintiff, appellant.*

*Poisson, Campbell & Marshall, A. Y. Arledge, and Ernest S. Delaney, Jr., for defendants, appellees.*

Ervin, J. We take it for granted without so adjudging for the purpose of this particular appeal that the Tidewater Power Company was charged with notice that children were in the habit of flying kites in the vicinity of the high voltage wires by the mere circumstance that the observable remnants of a kite were hanging on the wires during several weeks next preceding the tragedy. We are nevertheless constrained to affirm the compulsory nonsuit. It is a matter of common knowledge that

children ordinarily use strings, which are nonconductors of electricity, in flying kites. *Watral's Adm'r v. Appalachian Power Co.*, 273 Ky. 25, 115 S.W. 2d 372; *Kedziora v. Washington Water Power Co.*, 193 Wash. 51, 74 P. 2d 898. The evidence at the trial did not disclose any facts sufficient to charge the Tidewater Power Company with notice that a metal wire might be put to such a use. In consequence, the tragedy was not within the reasonable anticipation of the Tidewater Power Company. *Stanley v. Smithfield*, 211 N.C. 386, 190 S.E. 207; *Parker v. R. R.*, 169 N.C. 68, 85 S.E. 33; *Caraglio v. Frontier Power Co.*, 192 F. 2d 175; *Croxton v. Duke Power Co.*, 181 F. 2d 306; *Garrett v. Arkansas Power & Light Co.*, 218 Ark. 575, 237 S.W. 2d 895; *Callaway v. Central Georgia Power Co.*, 43 Ga. App. 820, 160 S.E. 703; *Dilley v. Iowa Public Service Co.*, 210 Iowa 1332, 227 N.W. 173; *Fredericks' Admr. v. Kentucky Utilities Co.*, 276 Ky. 13, 122 S.W. 2d 1000; *Watral's Adm'r v. Appalachian Power Co.*, supra; *Kelley v. Texas Utilities Co.* (Tex. Civ. App.), 115 S.W. 2d 1233; *Kedziora v. Washington Water Power Co.*, supra; 18 Am. Jur., Electricity, section 53; 29 C.J.S., Electricity, section 42.

The cases invoked by the plaintiff, to wit, *Benton v. Public-Service Corporation*, 165 N.C. 354, 81 S.E. 448, and *Ferrell v. Cotton Mills*, 157 N.C. 528, 73 S.E. 142, 37 L.R.A. (N.S.) 64, are distinguishable.

Affirmed.